



Johnson vs. Officer Latham

14-CV-2155

Deposition of: Officer Gary Tison

Taken on: February 18, 2016

**JENSEN LITIGATION SOLUTIONS**
180 North LaSalle Street
Suite 2800
Chicago, IL 60601
312.236.6936
877.653.6736
www.jensenlitigation.com




2:14-cv-02155-CSB-EIL   # 47-8   Page 3 of 8

Johnson vs. Officer Latham
Officer Gary Tison - 02/18/2016

Pages 2..5

Page 2

```
 1   APPEARANCES:
 2       THE BLAKE HORWITZ LAW FIRM
         MR. BLAKE W. HORWITZ  (via telephone)
 3       111 West Washington Street
         Suite 1611
 4       Chicago, Illinois 60602
         Phone:  (312) 676-2100
 5       E-Mail:  bhorwitz@bhlfattorneys.com
 6           On behalf of the Plaintiff;
 7       HERVAS, CONDON & BERSANI, P.C.
         MR. JASON ROSE
 8       333 Pierce Road
         Suite 195
 9       Itasca, Illinois 60143
         Phone:  (630) 860-4344
10       E-Mail:  jrose@hcbattorneys.com
11           On behalf of the Defendants.
12
13                *   *   *   *   *
14
15
16
17
18
19
20
21
22
23
24
```

Page 3

```
 1                     I N D E X
 2
 3   WITNESS                                    PAGE
 4   OFFICER GARY TISON
 5       Direct Examination by Mr. Horwitz ......   4
 6       Cross-Examination by Mr. Rose .........  60
 7
 8
 9                    E X H I B I T S
10                 (NO EXHIBITS MARKED)
11
```

Page 4

```
 1               (Witness sworn.)
 2       MR. HORWITZ:  Let the record reflect this is the
 3   discovery deposition of Officer Tison taken pursuant to
 4   notice and pursuant to the Federal Rules.
 5       Officer Tison, there is three or four ground
 6   rules.  Number one, all of your answers need to be out
 7   loud, okay?
 8       THE WITNESS:  Yes, sir.
 9       MR. HORWITZ:  If you answer the question, it will
10   be assumed you've understood the question, okay?
11       THE WITNESS:  Okay.
12       MR. HORWITZ:  And only one person talks at a time,
13   okay?
14       THE WITNESS:  Okay.
15       MR. HORWITZ:  If you need clarification on the
16   question, please tell me, and I'll clarify it, okay?
17       THE WITNESS:  All right.
18   WHEREUPON:
19                OFFICER GARY TISON,
20   called as a witness herein, having been first duly
21   sworn, was examined and testified as follows:
22                  DIRECT EXAMINATION
23   BY MR. HORWITZ:
24       Q.  What's your rank?
```

Page 5

```
 1       A.  Patrolman.
 2       Q.  And when did you start as a patrolman?
 3       A.  9/11 of the year 2000.
 4       Q.  Which department?
 5       A.  The Kankakee City Police Department.
 6       Q.  And is that where you work now?
 7       A.  Correct.
 8       Q.  So tell me what you remember of your
 9   interaction with Mr. Johnson on February 18th, 2014?
10       A.  I responded to a call there.  I was a backup
11   unit on North Washington.  When I got there, there was
12   two officers already there, a Patrolman Lacey and a
13   Patrolman Brad Latham.  They were talking to a white
14   male.  I got out of my car.  I stood by my car for a few
15   minutes and observed.  And then they began talking to a
16   black male by the name of Anthony Johnson.  I walked
17   over to where they were standing, talking.  A couple
18   other subjects came walking out from Mr. Johnson's
19   residence.  They became -- started being belligerent,
20   causing a commotion.  We were trying to get -- Well,
21   Officer Latham was trying to ask Mr. Johnson -- got his
22   name, and then he ran his name through dispatch by way
23   of a local check.  I was more talking to the other two
24   subjects that were friends of Mr. Johnson.  I remember
```

312.236.6936
877.653.6736
Fax 312.236.6968
www.jensenlitigation.com


JENSEN
Litigation Solutions

Johnson vs. Officer Latham
Officer Gary Tison - 02/18/2016

Pages 6..9

Page 6

1  hearing on the radio that dispatch advised Patrolman
2  Latham that they did have an Anthony Johnson who was
3  considered 1099, which means he has an active warrant,
4  and they informed the subject that was 1099, had a
5  specific date of birth. I remember hearing Patrolman
6  Lacey ask, "Is that your date of birth?" And Mr.
7  Johnson said yes, it was. So Patrolman Latham advised
8  Mr. Johnson that he had an active warrant and he put
9  handcuffs on him behind his back. Mr. Johnson was very
10 irritated at this moment and said he didn't have a
11 warrant. I remember Officer Latham asking if he had an
12 ID on him; he said no. And then the other two subjects
13 that were standing on the sidewalk, they began coming
14 closer and getting more and more agitated. I got in
15 between Officer Latham and Mr. Johnson and these two
16 subjects and was telling them, you know, "Please don't
17 interfere. We'll get this taken care of. It's not that
18 big of a deal. Just back away." And then Officer
19 Latham began to walk Mr. Johnson across the street near
20 my squad car. And then for whatever reason, he walked
21 southbound down the street to his squad car, probably
22 because mine was locked. And then I began hearing
23 Mr. Johnson yelling that he shouldn't be under arrest.
24 He didn't have a warrant. The two subjects that I was

Page 7

1  talking to, they pulled out a camera, started
2  videotaping the whole thing. They kept getting closer
3  and closer to me, and I advised them --
4          Hold on one second, please. The library
5  worker is coming in.
6          (Brief interruption.)
7  BY MR. HORWITZ:
8      Q.  Continue on officer.
9      A.  The two subjects, they held out their video
10 phone, started recording us. I told them that was fine.
11 I said, "But do not interfere." I said, "I'd appreciate
12 if you would stand across the street." Names were
13 called. They began calling names, getting more and more
14 aggressive. I told them, "You need to get up on the
15 street." While this was going on, I heard from down
16 where Officer Latham was putting in Mr. Johnson in his
17 car, or attempting to, I could hear Mr. Johnson yelling
18 and screaming. So I proceeded to walk that way to help
19 Officer Latham, if he needed it, to put Mr. Johnson in
20 the back of the car.
21         During that time, I observed a third
22 individual -- or that would be a fourth, I guess -- who
23 was later identified as Mr. Chandler. He came walking
24 from the south on Washington up to the back of

Page 8

1  Officer Latham and Mr. Johnson, who was still standing
2  outside the car. I began walking towards him. I heard
3  Mr. Latham -- or Officer Latham turn around, see
4  Mr. Chandler, and told him to please stand back and get
5  back. "Mr. Johnson is under arrest. I need you to
6  stand back." Chandler walked around. After yelling and
7  screaming at Officer Latham, he walked around and
8  started walking towards me in the street. As I was
9  walking towards Officer Latham, Chandler got in between
10 the two of us and he told me that --
11     Q.  When you say the two of us, what do you mean?
12     A.  Between myself and Officer Latham, who was
13 walking to help with Mr. Johnson, if need be.
14         So he got in between the two of us, and I
15 asked him to step to the side. He refused. He got in
16 my face and started screaming. He said he was going to
17 rip my fucking uniform off and kick my ass. I told him
18 to back away. I then pulled out my Taser. I told him,
19 "You need to get back up on the sidewalk." He stepped
20 in front of me again and reached towards me. That's
21 when I tased him and took him to the ground. He refused
22 to put his hands behind his back. He kept them tucked
23 in front of him.
24         Officer Lacey also grabbed his left arm. I

Page 9

1  grabbed his right arm, tried to pull his arms out from
2  underneath him. He refused to do that. I pressed the
3  trigger one more time. The taser made a connection. He
4  then took his hands out from underneath him and he was
5  handcuffed.
6          We then helped him up, put him in the -- We
7  brought him to my car, which was pretty close to right
8  across from us. I patted him down incident to arrest,
9  found no contraband or weapons and then placed him into
10 the back seat of my quad car.
11     Q.  If there was no warrant for Mr. Johnson, if
12 there was no warrant based upon your training and
13 knowledge of the practices of your department, would
14 there have been a reason to arrest Mr. Johnson?
15     MR. ROSE: Objection, compound, hypothetical,
16 confusing.
17     MR. HORWITZ: Anything else, my friend?
18     MR. ROSE: It was such a bad question there, I
19 could throw several more objections. You're referred to
20 Anthony Johnson. We know that there was a warrant for
21 an Anthony Johnson. So do you want to --
22     MR. HORWITZ: Oh, okay. How about you just go
23 ahead and tell him whatever you want to have him say?
24     MR. ROSE: I'm just trying to get you to explain

312.236.6936
877.653.6736
Fax 312.236.6968
www.jensenlitigation.com

JENSEN
Litigation Solutions

Johnson vs. Officer Latham
Officer Gary Tison - 02/18/2016

Pages 62..65

Page 62

1   A.   That's correct.
2   Q.   And Officer Latham was a field training
3 officer; is that correct?
4   A.   That's correct.
5   Q.   Officer Zingre was a new officer at that time?
6   A.   Correct.
7   Q.   Counsel earlier asked about hits on the
8 computer and I made various objections, and then there
9 was some testimony that you gave about a local check,
10 correct?
11   A.   Correct.
12   Q.   What is a local check?
13   A.   Local check is just where you ask the
14 dispatcher a name and date -- or a name and not a date
15 of birth to see if there is a local warrant.
16   Q.   And when you say a local warrant, are we
17 talking about warrants within Kankakee County?
18   A.   Kankakee County, correct.
19   Q.   So when a local check is done on a name --
20 Anthony Johnson, for example -- it's going to look for
21 Anthony Johnsons that may have a warrant in Kankakee
22 County?
23   A.   Correct.
24   Q.   Or is it the warrant was issued in Kankakee

Page 63

1 County or the individual lives in Kankakee County, if
2 you know?
3   A.   It would be the warrant in Kankakee County.
4   Q.   Now, you understand you're named by
5 plaintiff's counsel, Blake Horwitz, as a defendant in
6 this case?
7   A.   Correct.
8   Q.   And Mr. Horwitz has made various allegations
9 in this complaint against you, the primary one being --
10 well, the first one being a failure to intervene.  Now,
11 in this instance, did you ever use a racial epithet that
12 afternoon?
13   A.   No.
14   Q.   Did you ever hear Officers Latham or Zingre
15 use a racial epithet or slur that afternoon?
16   A.   No.
17   Q.   Now, there are allegations in this case that
18 Officer Latham used excessive force.  Did you observe --
19 Well, you've indicated that Officer Latham handcuffed
20 Mr. Johnson?
21   A.   Correct.
22   Q.   Other than the handcuffing of Mr. Johnson and
23 the walking of Mr. Johnson over to various squad cars,
24 did you see Officer Latham use any other force?

Page 64

1   A.   No, I did not.
2   Q.   Did you ever see Officer Latham throw
3 Mr. Johnson to the ground?
4   A.   No, I did not.
5   Q.   Did you ever see Officer Latham shove or push
6 Mr. Johnson against any squad car?
7   A.   No, I did not.
8   Q.   Did you ever see Officer Latham punch or kick
9 Mr. Johnson?
10   A.   No, I did not.
11   Q.   Did you ever see Officer Zingre use any force
12 whatsoever against Mr. Johnson?
13   A.   No, I did not.
14   Q.   Did you ever use any force of any kind
15 whatsoever against Mr. Johnson?
16   A.   No, I did not.
17   Q.   Did you ever touch Mr. Johnson?
18   A.   No, I did not.
19   Q.   Now, Mr. Horwitz's other claim against you and
20 the various officers is a false arrest.  You arrested
21 Porter Chandler?
22   MR. HORWITZ:  It's actually not my claim.  I'm not
23 a plaintiff.  I'm an attorney.  That's false
24 representation.

Page 65

1   MR. ROSE:  It's your client's claim that you
2 asserted, because, actually -- I don't know.  Were you
3 at your client's deposition?  Because he didn't know why
4 he had sued Officer Zingre or Officer Tison, but that's
5 in the testimony.  We'll save that for another day.
6   MR. HORWITZ:  I guess it's because he's not an
7 attorney and he doesn't understand things.  Do you want
8 to continue on with this or do you want to ask
9 questions?
10   MR. ROSE:  No.  I'm suggesting that you made those
11 allegations, but you're saying it's your client.  Either
12 way, we'll move on.
13   MR. HORWITZ:  Jason, please just move on and ask
14 legitimate questions, seriously.
15   MR. ROSE:  That's what I'm trying to do, but you
16 keep interrupting.
17   MR. HORWITZ:  No, you're not.  Not when you say
18 that I make claims and not when you suggest that I'm
19 making spurious claims when my client is not a lawyer
20 and he doesn't understand failure to intervene concepts
21 or Rule 11 or Iqbal and Twombly.
22   MR. ROSE:  Yes, I think you made spurious claims.
23 We can agree on that.  I think you made spurious claims,
24 but we'll move on.

312.236.6936
877.653.6736
Fax 312.236.6968
www.jensenlitigation.com

JENSEN
Litigation Solutions



CITY 002061



14.02.18.0006

# Kankakee Police Department
## P.C.C.
## PRELIMINARY CITIZEN COMPLAINT
## FACT SHEET


City of Kankakee

NAME OF COMPAINANT  Anthony Johnson
ADDRESS ███████████████  PHONE (H) ███████
DATE OF BIRTH ███████████  (W) _____
DATE OF INCIDENT  02-18-14     TIME _____
PLACE OF INCIDENT  543 N Washington
WAS COMPLAINANT ARRESTED  ☑ YES   ☐ NO    ARREST NUMBER  2014 6110
POLICE DEPARTMENT EMPLOYEE(S) INVOLVED:  Latham / Tison

NATURE OF ALLEGED COMPLAINT:
  A. ☑ VERBAL ABUSE         D. ☑ UN-PROFESSIONAL CONDUCT
  B. ☑ EXCESSIVE FORCE      E. ☐ OTHER
  C. ☑ INJURIES

BRIEF EXPLANATION OF ALLEGATION:

Standing outside with friends, police drives up going to different house next door, I talked to officer Latham and his partner, Latham leaves come back tells me to put my hands behind back, that I have warrants told them I didn't have any warrant and how would he know if he never asked my name. Officer Latham then began pushing and shoving me, officer Latham then slam me on the car causing me to injure my back he then start punching me and tryinst to shove me in car cussing and using racial slures

COMPLAINANT REFERRED TO  Scott Koerner
FOR FORMAL INTERVIEW  DATE _____  TIME _____
OFFICER TAKING REPORT  Lt. Jay Etzel
DATE OF REPORT  2-24-14

SIGNATURE OF COMPLAINANT  ███████████

EXHIBIT J

JOHNSON
EXHIBIT NO. 3
8-20-15
S. STUCKLY

Pg. 5

CITY 000036



**City of Kankakee**
Police Department
385 East Oak Street
Kankakee, Illinois 60901
(815) 933-0401 – Fax (815) 933-0463
City Web Site: www.ci.kankakee.il.us

## CITIZEN COMPLAINT AFFIDAVIT

I, __ANTHONY Johnson__ _____ (Name)

_____ (Address)

_____ (City, State)

_____ (Phone No.)

alleges that __GATHAM_____ ( Officer(s)/ names), Police Officer of the City of Kankakee, Committed the act of misconduct and/or violation. I affirm the following allegations are true. I understand that the facts of this incident will be investigated by departmental and/or legal authorities. I further understand that if no basis for this complaint is found in fact, and no evidence can be obtained or produced to sustain this complaint, I may be liable for prosecution under Illinois Compiled Statutes, Chapter 720. 5/26-1A4 (filing a false police report). I may also be liable for civil action by the accused Officers for slander, defamation of character, or other applicable remedies under the laws of the United States or the State of Illinois. Upon verification that the allegations against the Officer are true, proper disciplinary action will be administered to said responsible Officer or Officers.

Signature: _____

Date: __2-24-14__     Time: __2:30 pm__

Witness: _____

KCI-2
(09/09)

Case #
Page 6 of 15

CITY 000037