E-FILED
Saturday, 02 July, 2016  12:31:02 AM
Clerk, U.S. District Court, ILCD

# EXHIBIT C

Johnson vs. Officer Latham

14-CV-2155

Deposition of:  Officer Gary Tison

Taken on:  February 18, 2016

**JENSEN LITIGATION SOLUTIONS**
180 North LaSalle Street
Suite 2800
Chicago, IL  60601
312.236.6936
877.653.6736
www.jensenlitigation.com



1               IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
2                        EASTERN DIVISION

3
     ANTHONY JOHNSON,                    )
4                                        )
                        Plaintiff,       )
5                                        )
                 vs.                     ) No. 14-CV-2155
6                                        )
     OFFICER LATHAM, et al.,             )
7                                        )
                        Defendants.      )
8

9

10            The deposition of OFFICER GARY TISON, called

11   by the Plaintiff for examination, taken pursuant to

12   notice and pursuant to the Federal Rules of Civil

13   Procedure for the United States District Courts

14   pertaining to the taking of depositions, taken before

15   Antonette J. Graham, Certified Shorthand Reporter, at

16   201 East Merchant Street, Kankakee, Illinois, commencing

17   at 2:36 p.m. on the 18th day of February, 2016.

18

19

20

21

22

23

24



```
 1    APPEARANCES:

 2         THE BLAKE HORWITZ LAW FIRM
           MR. BLAKE W. HORWITZ  (via telephone)
 3         111 West Washington Street
           Suite 1611
 4         Chicago, Illinois 60602
           Phone:  (312) 676-2100
 5         E-Mail:  bhorwitz@bhlfattorneys.com

 6              On behalf of the Plaintiff;

 7         HERVAS, CONDON & BERSANI, P.C.
           MR. JASON ROSE
 8         333 Pierce Road
           Suite 195
 9         Itasca, Illinois 60143
           Phone:  (630) 860-4344
10         E-Mail:  jrose@hcbattorneys.com

11              On behalf of the Defendants.

12

13                   *    *    *    *    *    *

14

15

16

17

18

19

20

21

22

23

24
```



```
 1                    I N D E X

 2

 3   WITNESS                                PAGE

 4   OFFICER GARY TISON

 5        Direct Examination by Mr. Horwitz  .....   4

 6        Cross-Examination by Mr. Rose  ........  60

 7

 8

 9                  E X H I B I T S

10                 (NO EXHIBITS MARKED)

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```



```
1                        (Witness sworn.)

2        MR. HORWITZ:  Let the record reflect this is the

3    discovery deposition of Officer Tison taken pursuant to

4    notice and pursuant to the Federal Rules.

5             Officer Tison, there is three or four ground

6    rules.  Number one, all of your answers need to be out

7    loud, okay?

8        THE WITNESS:  Yes, sir.

9        MR. HORWITZ:  If you answer the question, it will

10   be assumed you've understood the question, okay?

11       THE WITNESS:  Okay.

12       MR. HORWITZ:  And only one person talks at a time,

13   okay?

14       THE WITNESS:  Okay.

15       MR. HORWITZ:  If you need clarification on the

16   question, please tell me, and I'll clarify it, okay?

17       THE WITNESS:  All right.

18   WHEREUPON:

19                        OFFICER GARY TISON,

20   called as a witness herein, having been first duly

21   sworn, was examined and testified as follows:

22                        DIRECT EXAMINATION

23   BY MR. HORWITZ:

24       Q.   What's your rank?
```



1     A.    Patrolman.

2     Q.    And when did you start as a patrolman?

3     A.    9/11 of the year 2000.

4     Q.    Which department?

5     A.    The Kankakee City Police Department.

6     Q.    And is that where you work now?

7     A.    Correct.

8     Q.    So tell me what you remember of your

9  interaction with Mr. Johnson on February 18th, 2014?

10    A.    I responded to a call there.  I was a backup

11 unit on North Washington.  When I got there, there was

12 two officers already there, a Patrolman Lacey and a

13 Patrolman Brad Latham.  They were talking to a white

14 male.  I got out of my car.  I stood by my car for a few

15 minutes and observed.  And then they began talking to a

16 black male by the name of Anthony Johnson.  I walked

17 over to where they were standing, talking.  A couple

18 other subjects came walking out from Mr. Johnson's

19 residence.  They became -- started being belligerent,

20 causing a commotion.  We were trying to get -- Well,

21 Officer Latham was trying to ask Mr. Johnson -- got his

22 name, and then he ran his name through dispatch by way

23 of a local check.  I was more talking to the other two

24 subjects that were friends of Mr. Johnson.  I remember



1    hearing on the radio that dispatch advised Patrolman

2    Latham that they did have an Anthony Johnson who was

3    considered 1099, which means he has an active warrant,

4    and they informed the subject that was 1099, had a

5    specific date of birth.  I remember hearing Patrolman

6    Lacey ask, "Is that your date of birth?"  And Mr.

7    Johnson said yes, it was.  So Patrolman Latham advised

8    Mr. Johnson that he had an active warrant and he put

9    handcuffs on him behind his back.  Mr. Johnson was very

10   irritated at this moment and said he didn't have a

11   warrant.  I remember Officer Latham asking if he had an

12   ID on him; he said no.  And then the other two subjects

13   that were standing on the sidewalk, they began coming

14   closer and getting more and more agitated.  I got in

15   between Officer Latham and Mr. Johnson and these two

16   subjects and was telling them, you know, "Please don't

17   interfere.  We'll get this taken care of.  It's not that

18   big of a deal.  Just back away."  And then Officer

19   Latham began to walk Mr. Johnson across the street near

20   my squad car.  And then for whatever reason, he walked

21   southbound down the street to his squad car, probably

22   because mine was locked.  And then I began hearing

23   Mr. Johnson yelling that he shouldn't be under arrest.

24   He didn't have a warrant.  The two subjects that I was



1    talking to, they pulled out a camera, started

2    videotaping the whole thing.  They kept getting closer

3    and closer to me, and I advised them --

4              Hold on one second, please.  The library

5    worker is coming in.

6                        (Brief interruption.)

7    BY MR. HORWITZ:

8         Q.    Continue on officer.

9         A.    The two subjects, they held out their video

10   phone, started recording us.  I told them that was fine.

11   I said, "But do not interfere."  I said, "I'd appreciate

12   if you would stand across the street."  Names were

13   called.  They began calling names, getting more and more

14   aggressive.  I told them, "You need to get up on the

15   street."  While this was going on, I heard from down

16   where Officer Latham was putting in Mr. Johnson in his

17   car, or attempting to, I could hear Mr. Johnson yelling

18   and screaming.  So I proceeded to walk that way to help

19   Officer Latham, if he needed it, to put Mr. Johnson in

20   the back of the car.

21              During that time, I observed a third

22   individual -- or that would be a fourth, I guess -- who

23   was later identified as Mr. Chandler.  He came walking

24    from the south on Washington up to the back of

312.236.6936
877.653.6736
Fax 312.236.6968
www.jensenlitigation.com


JENSEN
Litigation Solutions

1    Officer Latham and Mr. Johnson, who was still standing

2    outside the car.  I began walking towards him.  I heard

3    Mr. Latham -- or Officer Latham turn around, see

4    Mr. Chandler, and told him to please stand back and get

5    back.  "Mr. Johnson is under arrest.  I need you to

6    stand back."  Chandler walked around.  After yelling and

7    screaming at Officer Latham, he walked around and

8    started walking towards me in the street.  As I was

9    walking towards Officer Latham, Chandler got in between

10   the two of us and he told me that --

11        Q.   When you say the two of us, what do you mean?

12        A.   Between myself and Officer Latham, who was

13   walking to help with Mr. Johnson, if need be.

14             So he got in between the two of us, and I

15   asked him to step to the side.  He refused.  He got in

16   my face and started screaming.  He said he was going to

17   rip my fucking uniform off and kick my ass.  I told him

18   to back away.  I then pulled out my Taser.  I told him,

19   "You need to get back up on the sidewalk."  He stepped

20   in front of me again and reached towards me.  That's

21   when I tased him and took him to the ground.  He refused

22   to put his hands behind his back.  He kept them tucked

23   in front of him.

24             Officer Lacey also grabbed his left arm.  I



1   grabbed his right arm, tried to pull his arms out from

2   underneath him.  He refused to do that.  I pressed the

3   trigger one more time.  The taser made a connection.  He

4   then took his hands out from underneath him and he was

5   handcuffed.

6          We then helped him up, put him in the -- We

7   brought him to my car, which was pretty close to right

8   across from us.  I patted him down incident to arrest,

9   found no contraband or weapons and then placed him into

10  the back seat of my quad car.

11      Q.   If there was no warrant for Mr. Johnson, if

12  there was no warrant based upon your training and

13  knowledge of the practices of your department, would

14  there have been a reason to arrest Mr. Johnson?

15      MR. ROSE:  Objection, compound, hypothetical,

16  confusing.

17      MR. HORWITZ:  Anything else, my friend?

18      MR. ROSE:  It was such a bad question there, I

19  could throw several more objections.  You're referred to

20  Anthony Johnson.  We know that there was a warrant for

21  an Anthony Johnson.  So do you want to --

22      MR. HORWITZ:  Oh, okay.  How about you just go

23  ahead and tell him whatever you want to have him say?

24      MR. ROSE:  I'm just trying to get you to explain



 1  which Anthony Johnson are you referring to.

 2       MR. HORWITZ:  Can you just talk about your family

 3  too?  I mean, just throw whatever you want in there.

 4       MR. ROSE:  Your unprofessionalism will be on every

 5  page, Blake.

 6       MR. HORWITZ:  Can you do me a favor and just keep

 7  your objections limited to legal objections?

 8       MR. ROSE:  If your questions are better, I won't

 9  object at all.

10       MR. HORWITZ:  I know that my questions are an

11  abomination and that they're so bad that you need to

12  educate me in order to have me learn how to ask

13  questions; I understand that.  But what I would request

14  you do is if my questions are so bad, they will work for

15  you very well at trial, and the judge will never allow

16  them for any kind of impeachment purposes.  My request

17  is that you stick to Rule 30(d) or 30(c), which allows

18  for short legal objections and stick to the rules which

19  require that objections are as if we are at trial, which

20  means you don't suggest an answer, like we know there is

21  an outstanding warrant for Anthony Johnson, which

22  suggests an answer.  My request is that you keep it to

23  legal objections like, "Objection, lack of foundation,

24  speculation," words like that.  Can we agree on that?



1        MR. ROSE:   Just proceed, Blake.

2   BY MR. HORWITZ:

3        Q.    You saw a man, Anthony Johnson, standing

4   before you; is that correct?

5        A.    That's correct.

6        Q.    With regards to that human being, Mr. Johnson

7   that you saw understanding before you, I'd like you to

8   assume that there was no outstanding warrant for his

9   arrest for a moment.   Can you do that?

10        A.    Yes.

11        Q.    In other words, when Officer Latham handcuffed

12   him, at that moment in time there was no outstanding

13   warrant.   Can you assume that for a moment?

14        A.    I can assume it, but go ahead.

15        Q.    With that in mind, would there be any reason

16   to arrest him, to your knowledge?

17        A.    Not at that time, no.

18        Q.    To your knowledge, would there be probable

19   cause for arrest?

20        A.    No.

21        Q.    Any legal reason to arrest him?

22        A.    No.

23        Q.    Any basis based upon Terry v. Ohio to stop

24   him?



1        A.    Yes, there would be.

2        Q.    What would be the Terry basis for stopping

3    him?

4        A.    Well, there was a crime committed when the

5    snowballs hit a window, so there was probable suspicion

6    of a subject that came from that house who we do not

7    know possibly committed a crime.

8        Q.    Okay.  Was Johnson a suspect with regards to

9    that?

10       A.    I wasn't there at that time.  I didn't discuss

11   that with Officer Latham at that time.  I came after he

12   had already talked to the victim or the witness.

13       Q.    So at the scene where Officer Latham -- And

14   can you remind me of the name of the other officer,

15   please, the female officer?

16       A.    Officer Zingre.

17       Q.    So if Zingre said and Latham said that there

18   was no -- Strike that.

19             If Zingre said that Anthony Johnson was not a

20   suspect with regards to the snowball throwing, that was

21   their belief and their perception, then would there be a

22   Terry basis to stop Anthony Johnson, to your knowledge?

23       A.    To my knowledge, no.

24       Q.    And based upon your training, at your



1    department, would there be a Terry basis to stop Anthony

2    Johnson, based upon the hypothetical?

3         A.    Based upon the hypothetical, no.

4         Q.    Okay.  And that's because there must be a

5    reasonable articulable suspicion that criminal activity

6    has occurred relative to Johnson; and if Zingre did not

7    have that belief, then pursuant to Zingre's knowledge,

8    there would be no Terry basis to stop him; is that

9    correct?

10        MR. ROSE:  Objection, confusing, compound.  Counsel

11   is now testifying.

12        MR. HORWITZ:  Can you just say "legal conclusion?"

13   You don't have to speech.  You don't need to educate me.

14        MR. ROSE:  Your speeches are going longer than me.

15   I can do this.  Do you want to continue?  You're going

16   on longer -- your complaints about my objections are

17   longer than my objections.

18        MR. HORWITZ:  All I ask you do is keep your

19   objections legal as if we were at trial.

20        MR. ROSE:  It was legal.  Go on, continue.

21        MR. HORWITZ:  As if we were at trial.  Objection,

22   foundation, speculation, hearsay.  Not a speech.

23        MR. ROSE:  You're giving the speeches, Counsel.

24        MR. HORWITZ:  Thank you.  I know.



1  BY MR. HORWITZ:

2      Q.   In order for there to be a Terry stop, an

3  officer must have reasonable articulable suspicion that

4  criminal activity has taken place; is that correct?

5      A.   That's correct.

6      Q.   Or that it will occur or is occurring; is that

7  correct?

8      A.   That's correct.

9      Q.   If Zingre had no belief, reasonable

10 articulable suspicion that Latham had committed the

11 crime of throwing a snowball at somebody's house?

12     MR. ROSE:   You're getting the names wrong, Counsel.

13     MR. HORWITZ:   Thank you.   Thank you, Jason.

14 Anything else?   Jason, is your hair as gray today as it

15 was last time I saw you?   Is it still as gray?   I mean,

16 is it getting grayer?   All right.   I'll move on.

17 BY MR. HORWITZ:

18     Q.   If Latham had no reasonable suspicion that

19 Anthony Johnson had thrown a snowball, then Latham would

20 have no reason to stop Anthony Johnson; is that correct?

21     MR. ROSE:   Objection, compound, confusing,

22 hypothetical.

23     MR. HORWITZ:   Can you answer the question, please,

24 Officer?



1    BY THE WITNESS:

2        A.    Could you repeat the question real quick?  I'm

3    sorry.

4        Q.    If Latham had no belief that Johnson threw a

5    snowball at the window, he had no reasonable belief, he

6    had no reasonable articulable suspicion that Johnson

7    threw a snowball.  Putting aside the warrant issue,

8    there would be no basis to have stopped Johnson; is that

9    correct?

10       MR. ROSE:  Compound, confusing, form of the

11   question, incomplete hypothetical, assumes facts not in

12   evidence.

13       MR. HORWITZ:  Go ahead answer.

14   BY THE WITNESS:

15       A.    No, he wouldn't need to do a Terry stop.

16       Q.    So, to your knowledge, the reason why Latham

17   had stopped Johnson was for what, what purpose?

18       A.    Well, from what I understand, Johnson came

19   over and talked to Latham.  Nobody stopped Mr. Johnson.

20   He came over to discuss the problem of why we were

21   there.

22       Q.    So, to your knowledge, Johnson voluntarily

23   came over to talk to the police; is that correct?

24       A.    Correct.



1      Q.   And, to your knowledge, when Johnson came over

2   to voluntarily talk to the police, he was peaceful and

3   respectful; is that correct?

4      A.   That's correct.

5      Q.   And that's what you observed too; is that

6   correct?

7      A.   No, I wasn't there at that time.

8      Q.   Well, when you first saw him, he was peaceful;

9   is that correct?

10      A.   That's correct.

11      Q.   Respectful and appropriate, correct?

12      A.   Correct.

13      Q.   And it looked to you like he was trying to

14   help matters?

15      A.   I'd have to say yes.

16      Q.   So then there came a time where he learned

17   based upon what Latham said that there was an

18   outstanding warrant for his arrest; is that correct?

19      A.   That's correct.

20      Q.   And then Johnson got ticked off and angry; is

21   that correct?

22      A.   That's correct.

23      Q.   And he said words to the effect of, "There is

24   no warrant outstanding for me;" is that correct?



1          A.    I don't know his exact words.  Something to

2     that effect.

3          Q.    And you know, in fact, that there actually was

4     not a warrant for this Anthony Johnson; is that correct?

5          A.    At the time or now?

6          Q.    You know that now?

7          A.    Correct.

8          Q.    And you know that Anthony Johnson is a common

9     name; is that correct?

10         A.    That's correct.

11         Q.    You know that at any given moment in time, if

12    you put Anthony Johnson in for a background search,

13    you'll probably find there is an outstanding warrant for

14    an Anthony Johnson; would you agree with that?

15         MR. ROSE:  Objection, form of the question,

16    speculative, harassing.

17         MR. HORWITZ:  Can you answer the question, please,

18    if you don't feel too harassed?

19         MR. ROSE:  You do that to people, Blake.  Most

20    people feel harassed when they're with you, Blake.  You

21    know that.

22         MR. HORWITZ:  Just you, Jason.  Just you, my

23    friend.

24         MR. ROSE:  That's not what I hear.



1     MR. HORWITZ:  Yeah, I know.  I know.  Let's go.

2  Let's get to the officer.  Let's put our sideshow to the

3  side, okay?

4     MR. ROSE:  You put the sideshow in the front

5  circle, Counsel.

6     MR. HORWITZ:  Okay, Donald.  Let's go.  Let's

7  channel the inner Donald Trump at a later time.

8        Let's go, Officer.  Can you answer the

9  question, please?

10  BY THE WITNESS:

11     A.   It is a very common name.  And if you put it

12  in a computer, there might be a couple of names that

13  would pop up that may be 1099 or have a warrant.

14     Q.   So just so we can get through the last series,

15  if you put Anthony Johnson in the computer, you think

16  there would be a high likelihood of an outstanding

17  warrant popping up; is that correct?

18     MR. ROSE:  I'm going to object.  You're saying the

19  computer.  Do you want to say what computer, what type

20  of check?

21     MR. HORWITZ:  Jason, can you just let me do my job?

22  Don't do that.

23     MR. ROSE:  You're doing anything but your job,

24  Counsel.  If this was --



1      MR. HORWITZ:  Jason, stop it.

2      MR. ROSE:  If this was a trial --

3      MR. HORWITZ:  Dude, I'm not okay with this, and I

4  will call the judge.  That's not okay.

5      MR. ROSE:  Blake, if this was a trial, I would

6  object and the Court would make you ask a better, more

7  specific question, because your question, which is so

8  bad -- it's so obviously bad -- but you say, if he puts

9  it in the computer.  If this was a courtroom, I would

10  say, "Objection.  Counsel has not indicated what

11  computer he's talking about.  Incomplete."  And the

12  Court would make you ask a better question.  I wish the

13  Court was here, because the Court would then make you

14  ask good questions.  You would not be allowed -- you

15  would not get answers to these questions, because the

16  questions are so incomplete that they're calling for --

17  the witness would not be able to answer these questions,

18  they're so bad.  So that's what I'm raising.

19      MR. HORWITZ:  Okay.  So what I'm going to do is I'm

20  going to pull up Judge Bernthal's number.  I'm going to

21  try it one more time, and then I'm going to call him.  I

22  don't want you doing what you just did.  You know how to

23  object.  After that, I can easily get him in here -- or

24  at least I can try -- because that's not okay with me,

312.236.6936
877.653.6736
Fax 312.236.6968
www.jensenlitigation.com


JENSEN
Litigation Solutions

1  what you're doing.  So I don't care if you care.  I

2  don't care if you don't care.  I know we're not trying

3  to be friendly with each other, but what you're doing is

4  not okay.  So I'll try it one more time, and then after

5  that, if there is a speaking objection, I will simply

6  dial.

7       MR. ROSE:  Great.

8  BY MR. HORWITZ:

9       Q.  So would you agree, Officer, if you put

10  Anthony Johnson in the computer, likelihood is that his

11  name will pop up as some sort of a hit; would you agree

12  with that?

13       A.  It's a possibility, yes.  It's a very common

14  name.

15       Q.  And with common names, is it accurate to say

16  that one must be careful to investigate common names to

17  make sure that a person you're investigating is actually

18  the person that's the subject matter of the hit; would

19  you agree with that?

20       MR. ROSE:  Objection, form of question, compound

21  question, confusing, vague.

22  BY MR. HORWITZ:

23       Q.  Is that true?

24       A.  That's correct.  If we ask the subject for



1   identification, it would help if he would give it to us,

2   and then we would know who we were dealing with.

3         Q.   No, no, no, that wasn't my question.   My

4   question to you is:  If you get a hit on somebody

5   through the computer -- By the way, you know what I mean

6   by hit on the computer, right?

7         A.   Yes.

8         Q.   That's common parlance as a police officer,

9   correct?

10        A.   Correct.

11        Q.   You're not confused by it, correct?

12        A.   No.

13        Q.   It's easy to understand, correct?

14        A.   Correct.

15        Q.   So if you get a hit on a computer with

16  somebody's name and it's a common name, then it's a good

17  idea for the officer to get some specifics from the

18  individual in order to make sure that that individual

19  that the officer is inquiring about is the same person

20  that is coming up on the computer with a hit; is that

21  correct?

22        A.   That's correct.

23        MR. ROSE:  I'm going to object for the record.  It

24  was a compound question, and there were numerous phrases



1    that were vague.

2    BY MR. HORWITZ:

3         Q.    So, Officer, was my question to you easy to

4    understand?

5         A.    I understood it.

6         Q.    And so you've been trained a long time ago

7    with regards to this sort of issue; is that correct?

8         A.    That's correct.

9         Q.    And it's pretty common sense with officers,

10   when there's a common name, to make sure that the

11   individual that comes up as a hit on a computer is the

12   same individual that's before the officer, correct?

13        A.    That's correct.

14        Q.    And would you say the same principles apply

15   when you call in a dispatch?

16        A.    Yes.

17        Q.    So, in this instance, there was a call in to

18   dispatch, and there was a return relative to a gentleman

19   by the name Anthony Johnson; is that correct?

20        A.    That's correct.

21        Q.    And you clearly heard Anthony Johnson

22   represent that he did not have an outstanding warrant;

23   is that right?

24        A.    No, that's not right.  We asked him --



1      Q.   What did you hear Anthony --

2      A.   We asked him if -- Officer Zingre asked him if

3  that was his date of birth, the person that came back

4  with the warrant hit, and he said yes.  We asked him if

5  he had any idea --

6      Q.   Are you reading that off a report, or is that

7  your memory?

8      A.   That's my memory.  I don't have a report in

9  front of me.

10      Q.   Now, you said that we asked him.  Are you

11  saying you did or Officer Zingre did?

12      A.   Officer Zingre did.  She asked him -- Go

13  ahead.

14      MR. ROSE:  Are you going to keep interrupting the

15  witness, Counsel?

16  BY MR. HORWITZ:

17      Q.   What did Officer --

18      MR. ROSE:  Counsel, are you going to keep

19  interrupting the witness?

20  BY MR. HORWITZ:

21      Q.   What did Officer Zingre ask him?

22      A.   When it came back that that name had a hit

23  with a certain date of birth, she asked him, "Is that

24  your date of birth?"  And he said yes.



1    Q.   And you specifically remember her saying that?

2    A.   Yes.

3    Q.   Has your memory been refreshed by any

4    conversation you had with her?

5    A.   No.

6    Q.   And has your memory been refreshed by any

7    notes that you've read?

8    A.   I don't remember reading any notes from

9    Officer Zingre.

10   Q.   When is the last time you spoke to her with

11   regards to the arrest of Anthony Johnson?

12   A.   I don't know if I ever spoke to her about it.

13   Q.   When you say you don't know, are you saying

14   that as a colloquialism for you haven't spoken to her,

15   or are you saying you really just don't know either way?

16   A.   I don't remember ever speaking to her about

17   the arrest after that evening.

18   Q.   How is it that that part of the arrest

19   regarding the arrest of Anthony Johnson sticks into your

20   mind?  Meaning, her saying, "Is this your date of

21   birth?"

22   A.   Certain parts stick in my mind.  Certain parts

23   don't.  That's what she said.

24   Q.   How many arrests have you been involved in



1    since this incident?  Would you say a couple hundred?

2        A.    Probably.

3        Q.    And, beforehand, would you say you had been

4    involved in at least about 400 arrests before the

5    Anthony Johnson arrest?

6        A.    In my career?

7        Q.    Yes, beforehand.

8        A.    I'm sure way more than that, but that's

9    correct.

10       Q.    So I'm going to ask you to assume for a moment

11   that the -- Strike that.

12            You're saying that Officer Zingre offered

13   Anthony Johnson a date of birth?  She actually

14   communicated a date of birth to him; is that correct?

15       A.    Dispatch said it over the radio.

16       Q.    Okay.  So you remember dispatch saying a date

17   of birth over the radio?

18       A.    That's correct.

19       Q.    And you heard that as well?

20       A.    Yes.

21       Q.    You heard it on your radio that was on your

22   person?

23       A.    Yes.

24       Q.    And you know now that there was no -- that



 1  that date of birth would not have applied to the Anthony

 2  Johnson that was in front of you, correct?

 3       A.   I know that now.

 4       Q.   So, therefore, if he heard that date of birth,

 5  you know that that would not have been his date of

 6  birth; is that correct?

 7       A.   I don't know his exact date of birth, but it

 8  seems that way as of now.

 9       Q.   Let me be really clear to you.

10       MR. ROSE:  Please do, Blake.

11  BY MR. HORWITZ:

12       Q.   That warrant was not for Anthony Johnson you;

13  know that, correct?  Not for the Anthony Johnson that

14  was before you, correct?

15       A.   Correct.

16       Q.   That was not his date of birth, correct, the

17  date of birth you heard over the radio?

18       A.   Apparently that's correct.

19       Q.   So is it your testimony under oath that he

20  said that the date of birth that you heard over the

21  radio was actually his date of birth?

22       A.   That's correct.

23       Q.   Do you have any explanation for why he would

24  make a false representation relative to his date of



1  birth?

2      MR. ROSE:  I'm going to object.  You're asking him

3  to speculate about your client's state of mind.

4      MR. HORWITZ:  You're speeching.

5      MR. ROSE:  It's not a speech.

6      MR. HORWITZ:  Don't do that.

7      MR. ROSE:  It's not a speech.

8      MR. HORWITZ:  Jason, you said you're asking him to

9  speculate.  Don't say those things, please.  You can say

10  and do whatever you want to right now.  I don't care if

11  you respond to me.  It doesn't really matter what you

12  say.  I'm asking you not to do it.  I will call the

13  judge next time.

14      MR. ROSE:  Blake, you can do whatever you want.

15  You're so unprofessional with everything you say.  Call.

16  It doesn't bother me.

17      MR. HORWITZ:  Okay.  Great.

18          Ms. Court Reporter, can you read the question

19  again, please?

20                  (Record read as requested.)

21      MR. ROSE:  Objection, calls for speculation.

22  BY MR. HORWITZ:

23      Q.   Officer, can you answer that question?

24          And, Ms. Reporter, can you reflect in the



1  transcript that the question is being read before the

2  answer?

3            Go ahead, Officer.

4  BY THE WITNESS:

5       A.   The only thing I can speculate is that he's a

6  liar.  I don't know.

7       Q.   You mean that he, as a human being, is a liar?

8       A.   You asked me to speculate.  That's my guess.

9  I don't know why he would lie.

10      Q.   Is there anything about what was occurring

11 that evening with him in terms of his interaction with

12 Officer Zingre and Officer Latham which would provide

13 anymore information to you as to why he would

14 misrepresent his date of birth?

15      A.   I don't have anymore information of why he

16 would do that, no.

17      Q.   Did he suggest to you in any fashion that he

18 wanted to be arrested?

19      A.   No.

20      Q.   Immediately before he lied about his date of

21 birth, you recognized that he was being peaceful and

22 cooperative; is that correct?

23      A.   That's correct.

24      Q.   Immediately before he lied about his date of



1  birth, you recognized that he was cooperating with the

2  officers; is that correct?

3         A.    That's correct.

4         Q.    Answering all their questions; is that

5  correct?

6         A.    Yes.

7         Q.    His voice and tone was calm, correct?

8         A.    As far as I remember, yes.

9         Q.    His facial expression was calm, correct?

10        A.    It was pitch black out there.  I didn't see

11 his facial expressions.

12        Q.    Did you see his body, like his hands and his

13 torso?

14        A.    No.

15        Q.    You didn't see that?

16        A.    As I said earlier, I was dealing with two

17 other subjects that were also yelling and screaming and

18 hostile.

19        Q.    If they were yelling and screaming and

20 hostile, how could you hear the exchange wherein he lied

21 about his date of birth?

22        A.    I didn't hear every word, but I did hear that.

23        Q.    So you heard the select words from the radio

24 and then to Zingre and then to Johnson?  You heard that



1    exchange?

2        A.    Yes.

3        Q.    And you're clear about that in your mind, even

4    though there's other people that are yelling?

5        A.    Yes.

6        Q.    How far were you aware from Johnson when he

7    responded to Zingre about his date of birth?

8        A.    I could not even begin to tell you.

9        Q.    Do you have any idea at all?  Do you have any

10   estimates?

11       A.    Maybe five feet away.

12       Q.    If you outstretched your arm, would you have

13   been able to touch Zingre?

14       A.    Probably not.

15       Q.    If you took one step forward and outstretched

16   your arm, would you have been able to touch Zingre?

17       A.    I would be getting pretty close.

18       Q.    Same question relative to Mr. Johnson?

19       A.    He was standing right next to her, so yes.

20       Q.    And where were these other individuals that

21   were yelling?

22       A.    They were standing to the west of Mr. Johnson.

23       Q.    And they were loud?

24       A.    Yes.  They kept making comments and yelling

312.236.6936
877.653.6736
Fax 312.236.6968
www.jensenlitigation.com

JENSEN
Litigation Solutions

1   and screaming, and then they would stop and then they

2   would start again.

3       Q.    And did you ever make a note that Mr. Johnson

4   had falsified his date of birth to the police?

5       A.    I don't recall.

6       Q.    But he did falsify his date of birth to the

7   police, correct?

8       A.    That's correct.

9       Q.    And is that a crime to do that, to misidentify

10  yourself?

11      A.    Yes, it is.

12      Q.    Was he ever arrested for that; do you know?

13      A.    That's what he was arrested for that evening.

14      Q.    He was arrested for falsifying himself as

15  somebody else?

16      A.    I believe so.

17      Q.    In your report, it says Johnson gave a false

18  date of birth and returned after being run through

19  L.E.A.D.S.  So what do you mean by gave a false date of

20  birth and returned after being run through L.E.A.D.S.?

21  What does that mean?

22      A.    Well, that means when he said that was his

23  date of birth, and that date of birth ran through

24  L.E.A.D.S. had the hit on that subject, Anthony Johnson.



1        Q.    What does the phrase mean "after being run

2     through L.E.A.D.S.?"

3        A.    The dispatcher ran him through L.E.A.D.S.; and

4     with that date of birth, he returned with a hit.

5        Q.    So did he give the date of birth first and

6     then he was ran through L.E.A.D.S.?

7        A.    I believe that Officer Latham just asked for a

8     local check.  He didn't run his date of birth.

9        Q.    Was he ever run through L.E.A.D.S.?

10       A.    Yes.  That's how the hit came back -- or a hit

11    came back on a person through that.

12       Q.    Do you know if dispatch ran him through

13    L.E.A.D.S.?

14       A.    I don't know what dispatch did.

15       Q.    The phrase "run through L.E.A.D.S.," are you

16    guessing as to what dispatch did?

17       A.    He had to be run through L.E.A.D.S., otherwise

18    a hit wouldn't have came back, I don't believe.

19       Q.    Is a local check a L.E.A.D.S. check?

20       A.    If a local check came back with a hit, then

21    they would run it through L.E.A.D.S. automatically, I do

22    believe.

23       Q.    You don't know if dispatch checked L.E.A.D.S.

24    in order to discern that there was a warrant out for



1  Anthony Johnson, correct?

2       A.   They always have.  I'm not assuming that they

3  wouldn't have in this case.

4       Q.   Did any of the officers tell you that they

5  arrested him for falsifying his name?

6       A.   No.

7       Q.   Why are you saying he was arrested for

8  falsifying his name?

9       A.   Well, I can't imagine why else.  You arrest

10 somebody if they give you a false name.  That's the

11 point of arresting him in the first place.  Once he

12 began to resist, that's a separate charge.

13      Q.   So you're saying the initial reason for

14 arresting him based upon what you observed was that he

15 gave a false name; is that correct?

16      A.   No.  The initial one would be because the

17 warrants matched up.

18      MR. ROSE:  Counsel, we're going to take a break.

19 Thanks.  Ten minutes.

20                    (A short break was had.)

21 BY MR. HORWITZ:

22      Q.   At any time when you saw Mr. Johnson that

23 evening, did you see any reason to use force relative to

24 Mr. Johnson?



1      A.   Well, when he began pulling away from

2   Officer Latham, I could see -- you have to hold onto

3   him.  But other than that, no.

4      Q.   Okay.  So he began to pull away after Officer

5   Latham started to handcuff him?

6      A.   Yes.

7      Q.   And would you consider that to be sort of a

8   natural response of an individual, assuming that the

9   individual believed that there was no outstanding

10  warrant for his arrest, that that person would be

11  surprised -- Strike that.

12           Can you appreciate, that if Mr. Johnson did

13  not falsify his date of birth, that he might be

14  surprised that Latham is handcuffing him?

15      MR. ROSE:  Objection, form, compound, speculation.

16      MR. HORWITZ:  Can you answer, please?

17  BY THE WITNESS:

18      A.   I would say surprised, yes.

19      Q.   And if individuals are being surprised that

20  they're being arrested, can you appreciate that they may

21  pull back?

22      MR. ROSE:  Same objection.

23  BY THE WITNESS:

24      A.   Under my job, no, I cannot.



1    Q.   You mean individuals are not allowed to resist

2    arrest?

3    A.   That's correct.

4    Q.   Okay.  Whether or not people are allowed to do

5    anything under the law, you still recognize that people

6    have emotions, right?

7    A.   Yes, they do.

8    Q.   And they still have a phenomenon called

9    reaction, like people react, right?

10   A.   Right.

11   Q.   I am not asking you to tell me what Illinois

12   law is and I'm not asking you to tell me whether or not

13   an individual is permitted to resist.  I'm asking you to

14   appreciate the concept that a person may react when

15   surprised.  Do you know what I mean by that?

16   A.   Yes.

17   Q.   So my question, then, to you is:  If

18   Mr. Johnson did not falsify his date of birth and he was

19   surprised that he was being handcuffed by

20   Officer Latham, would his pulling away be a natural

21   reaction to Officer Latham approaching with the

22   handcuffs?

23        MR. ROSE:  Objection, form of the question.

24        MR. HORWITZ:  Did you understand my question?



1          THE WITNESS:  Could you repeat it one more time,

2     please?

3          MR. HORWITZ:  Ms. Court Reporter, do you got it?

4                    (Record read as requested.)

5     BY THE WITNESS:

6          A.   I can't tell you what most of the population

7     would do as far as what would happen in that situation,

8     how they would react.  I can just tell you how it

9     appeared he reacted.

10         Q.   Well, was his reaction within the realm of

11    what you would consider to be what many people would do

12    under the circumstances where they're being arrested for

13    an outstanding warrant and handcuffs are approaching and

14    they know there is no outstanding warrant?

15         A.   Honestly, I would have to say no.  People I

16    know would not act like that.  They would not scream and

17    holler and pull away.

18         Q.   Is that the first thing he did; scream, holler

19    and pull away?

20         A.   I don't know the first thing he did.  I'm not

21    sure.

22         Q.   What's the first thing he did?

23         A.   I don't know.

24         Q.   So why did you just say they would not scream,



 1  holler and pull away?

 2      A.   Because at one point when I looked over,

 3  that's what he was doing.  I don't know if it was the

 4  first thing he did or the last thing he did.

 5      Q.   What was the first thing he did?

 6      A.   I just said I don't know.

 7      Q.   What's the second thing he did?  Strike that.

 8           What is the first thing you remember him

 9  doing?

10      A.   Officer Latham was walking away with him.  I

11  looked over.  I heard Mr. Johnson yelling and he was

12  flailing about.  It appeared he was trying to pull away.

13      Q.   Were his hands handcuffed at the time he was

14  flailing about?

15      A.   Yes, they were.

16      Q.   Then how was he flailing?

17      A.   With his shoulders.

18      Q.   So what you're saying is he was moving his

19  shoulders; he was not flailing with his hands?

20      A.   Correct.

21      Q.   His hands were handcuffed behind his back?

22      A.   Yes.

23      Q.   And by flailing you mean that he's moving his

24  shoulders up and down?



1    A.   More of a back and forth motion.

2    Q.   Was he bending his torso?

3    A.   I --

4    Q.   You don't know if he was bending at the waist?

5    A.   I don't remember.

6    Q.   So, I'm sorry, you described his shoulders as

7    doing what?  Back and forth?

8    A.   Yes.

9    Q.   Back and forth means to the right and to the

10   left?

11   A.   Yes.

12   Q.   Did you see his body move to the right and

13   left?

14   A.   Well, most of the body follows the shoulders,

15   so...  I didn't see his feet.  It was dark out.  But I

16   saw his upper body moving.

17   Q.   So when Latham first approached Anthony

18   Johnson with the handcuffs, you did not see that; is

19   that correct?

20   A.   No, I did not.

21   Q.   Is it possible you saw it, but you don't

22   remember it?

23   MR. ROSE:  I'm going to object.  You're asking him

24   to speculate as to what's possible.



1      MR. HORWITZ:  Just keep it legal, like foundation,

2   speculation.

3      MR. ROSE:  That is a legal objection.

4      MR. HORWITZ:  No, it's not.  Anyway, move on.

5   BY MR. HORWITZ:

6      Q.   So, Officer, is it possible that you --

7      MR. ROSE:  Don't ask the witness what's possible.

8   It's going to immediately set off that same objection.

9      MR. HORWITZ:  Answer the question, please.

10      MR. ROSE:  You know what, if we were in a court,

11   there is no judge that would allow the witness to answer

12   the "is it possible" question.

13   BY MR. HORWITZ:

14      Q.   Officer, do you know whether or not your

15   attention was drawn elsewhere when Latham went to

16   handcuff Mr. Johnson?

17      A.   I'm not for sure.

18      Q.   So you don't know if Johnson pulled away from

19   Latham initially, correct?

20      A.   Initially, no.

21      Q.   Initially, he did not, or, initially, you

22   don't know?

23      A.   Initially, I don't know.

24      Q.   Did you hear Anthony Johnson provide his date



1    of birth to Officer Latham?

2         A.    No, I did not.

3         Q.    Did Anthony Johnson communicate his date of

4    birth to Officer Latham?

5         A.    I don't know.  I didn't hear it.

6         Q.    Do you have any knowledge as to how it is that

7    Anthony Johnson would be able to communicate to Latham a

8    date of birth that is coincidentally the same date of

9    birth as somebody who has an outstanding warrant?

10        A.    I have no idea.

11        Q.    Have you ever done like an internal

12   investigation of another officer?

13        A.    No.

14        Q.    If you were looking at a report and the report

15   suggested that a man gave a date of birth of another

16   individual with the same man -- Strike that.

17              If you were reviewing a police report and you

18   saw on the report that it stated that a suspect by the

19   name of Anthony Johnson gave a date of birth of a man by

20   the name of Anthony Johnson who also had an outstanding

21   warrant and he provided the same exact date of birth of

22   an Anthony Johnson who has an outstanding warrant, would

23   that seem peculiar to you?

24        MR. ROSE:  Counsel, do you want to withdraw the



1   question?

2        MR. HORWITZ:  Could you answer the question,

3   please?

4        MR. ROSE:  Hold on, because I'm going to make some

5   objections.  Hypothetical, speculative, confusing,

6   vague, form of question.  I don't recall if I said

7   speculative.

8        MR. HORWITZ:  Go ahead.  Can you answer the

9   question, please?

10  BY THE WITNESS:

11       A.   If I was investigating another officer?

12       Q.   Let's just say if you looked at the report of

13  a fellow officer, and that's what you saw in the report,

14  would you find that to be peculiar?

15       MR. ROSE:  Same objection.

16  BY THE WITNESS:

17       A.   I have never been in that role to read another

18  report.  I'm unsure.

19       Q.   Let's take what you just said, and I'm going

20  to ask you another hypothetical.

21            If an officer walked up to somebody else --

22  you're reading the report, and in the report it says

23  that he took out a baseball bat and banged somebody over

24  the head, would you find that peculiar?



1      A.   Peculiar?

2      Q.   Yes.

3      MR. ROSE:   Objection, form of question,

4  speculative, irrelevant, harassing.

5      MR. HORWITZ:   Can you answer the question, please?

6  BY THE WITNESS:

7      A.   No, I wouldn't find it peculiar.

8      Q.   Would you find it to be out of the ordinary?

9      A.   No.

10     Q.   Strange?

11     A.   No.

12     MR. ROSE:   Are you just going to give different

13  definitions for the word "peculiar?"

14  BY MR. HORWITZ:

15     Q.   So that would be a normal event for you to see

16  a report that says that kind of thing?

17     MR. ROSE:   Objection.   Mischaracterizes the

18  testimony, which is based on your horrendous questions.

19     MR. HORWITZ:   Go ahead, Officer.

20  BY THE WITNESS:

21     A.   If you're asking about a report that says

22  somebody hit somebody with a baseball bat, I would say

23  that's none of those things.

24     Q.   No, no, no.   I'm not sure you heard me.



1              The report says the following:  Officer

2    Johnson walked up to a man by the name of Smith.

3    Officer Johnson took out a baseball bat and banged Smith

4    over the head five times.  Officer Johnson then walked

5    away.  If that's what the report said, would you find

6    that peculiar?

7         A.   No.

8         Q.   Why not?

9         A.   Because it's what's in a report.

10        Q.   Okay.  So what you're saying is, whatever is

11   found in a report is not peculiar; it doesn't matter

12   what it is?

13        A.   I didn't say that.

14        Q.   Would you find that to be a report that would

15   require somebody to look further into to see what

16   happened?

17        A.   If the officer had talked to the victim and

18   has photos and has everything in line, then no.

19        Q.   I'm not sure -- What do you mean about the

20   officer spoke to the victim?

21        A.   You're asking me about a subject that got hit

22   in the head with a baseball bat.

23        Q.   No, no, no.  I'm not asking you about that.

24   I'm sorry.  Maybe we're not understanding each other.

312.236.6936
877.653.6736
Fax 312.236.6968
www.jensenlitigation.com

JENSEN
Litigation Solutions

1        A.    Yeah, I'm lost.  I've got to tell you.

2        Q.    That's fine.  Here is the question:  If a

3   police report said that reporting officer took a

4   baseball bat, and the reporting officer walked up to a

5   civilian and banged civilian over the head five times

6   and then walked away, the reporting officer then walked

7   away, would you find that to be a strange report?

8        A.    Yes.

9        Q.    A peculiar report?

10       A.    Yes.

11       Q.    You don't have to be in the officer's shoes in

12  order to recognize that that is a strange report, right?

13       A.    That's correct.

14       Q.    You can look at a report and say to yourself,

15  "That's kind of strange," right?

16       A.    Right.

17       Q.    Okay.  By analogy I'm asking you to consider a

18  different report, one where a civilian comes up with a

19  date of birth, and it happens to be the same date of

20  birth of another individual with his full name.

21       MR. ROSE:  Counsel, that's not what the witness

22  testified to.  Are you referring to a particular report?

23  I'm confused.

24       MR. HORWITZ:  All right.  So I'm going to finish my



1   question.

2        MR. ROSE:  You weren't done with it?  It's going to

3   get worse?

4        MR. HORWITZ:  No.  All right, Jason.  I really

5   don't want to do this kind of stuff, so I'll try it

6   again and I'm going to go with my question and I'm going

7   to make a clear record.

8   BY MR. HORWITZ:

9        Q.   If you read a report where a civilian speaks

10  to an officer and the civilian provides to the officer

11  his name, and the officer looks up this name and learns

12  that there is an outstanding warrant for that name, and

13  then the civilian provides the date of birth himself for

14  the same civilian for which there is an outstanding

15  warrant, but they're not the same people; in other

16  words, the person that has the outstanding warrant

17  that's the subject matter of the officer's investigation

18  and the civilian standing before the officer are not the

19  same person.  First of all, do you understand the

20  scenario I'm providing?

21       A.   Yes, I do.

22       Q.   Would you find it peculiar that the civilian

23  would provide the officer with the exact date of birth

24  of the individual that had the outstanding warrant but



1  is of the same name as the civilian?

2       MR. ROSE:  Objection, compound, confusing,

3  hypothetical, speculation.

4       MR. HORWITZ:  Answer the question, please.

5  BY THE WITNESS:

6       A.   I have actually had that happen, but, yes, it

7  would be peculiar if somebody would give the date of

8  birth since we're talking speculatively and not about

9  this case.

10       Q.   In this instance, did Anthony Johnson to your

11  knowledge tell Officer Latham his date of birth?

12       A.   Not to my knowledge, no.

13       Q.   Did you hear Anthony Johnson speak to Officer

14  Latham when there was an interaction with Officer Latham

15  with regards to Anthony Johnson's date of birth?

16       A.   No, I did not.

17       Q.   Did you hear Officer Zingre speak to Anthony

18  Johnson with regards to an issue concerning Anthony

19  Johnson's date of birth?

20       A.   Yes, I did.

21       Q.   Did you hear Anthony Johnson provide a date of

22  birth to Officer Zingre?

23       A.   No.

24       MR. ROSE:  Objection, asked and answered several



1    times earlier.

2    BY MR. HORWITZ:

3        Q.   I'm sorry.  Did you hear Anthony Johnson

4    provide a date of birth to Officer Zingre?

5        A.   No.

6        Q.   Did you hear Anthony Johnson provide any

7    numbers attributable to a date of birth to Officer

8    Zingre?

9        A.   No, I did not.

10       Q.   Did you hear Anthony Johnson provide any -- a

11   date of birth to Officer Latham?

12       A.   No, I did not.

13       Q.   Assuming that you were present, approximately

14   five feet away from Latham and Zingre when they were

15   speaking to Johnson with regards to his date of birth,

16   assuming that you were approximately five feet away and

17   the other individuals were wherever they were at, would

18   you have been able to hear Zingre and Johnson speak

19   to -- Strike that.

20            Would you have been able to hear Zingre and

21   Latham speak to Johnson with regards to Johnson's date

22   of birth?

23       A.   I wouldn't have been able to hear everything

24   with the other subjects screaming.  I heard what I told



1   you that I heard, and that was it.

2        Q.   Did you hear Officer Latham ask Anthony

3   Johnson to provide his date of birth?

4        A.   I don't remember.

5        Q.   Did you hear Officer Zingre ask Anthony

6   Johnson to provide his date of birth?

7        A.   I don't remember.

8        Q.   But you remember Officer Zingre asking Anthony

9   Johnson to confirm that the date of birth that came over

10  the radio was his date of birth; is that correct?

11       A.   That's correct.

12       Q.   That's all you remember relative to any of

13  conversation concerning a date of birth; is that

14  correct?

15       A.   That's correct.

16       Q.   Do you have a vivid recollection of that

17  moment in time where dispatch provided a date of birth,

18  and Zingre asked Johnson if that was the date of birth?

19       A.   I'd say for the most part.

20       Q.   I would like you to assume that that is the

21  only communication that took place; that you heard it

22  all, okay?

23       A.   Okay.

24       Q.   And there was no other communication relative

312.236.6936
877.653.6736
Fax 312.236.6968
www.jensenlitigation.com


JENSEN
Litigation Solutions

1   to date of birth and Anthony Johnson, okay?

2        A.   All right.

3        Q.   In other words, what you're saying is all that

4   came out of the mouth of Zingre, dispatch and Latham

5   were referable to dates of birth and Johnson, okay?

6        A.   Okay.

7        Q.   That nothing else was said between dispatch,

8   Johnson, Latham and Zingre, okay?

9        A.   All right.

10       Q.   I'd like you to assume that for a moment,

11  okay?

12       A.   Okay.

13       Q.   Based upon that assumption, tell me if this is

14  true or false:  Johnson gave Latham his date of birth?

15       A.   I'd have to say true -- or I'm sorry.  It

16  wouldn't be Latham.  It would be Zingre.  I don't know

17  what Latham heard.

18       Q.   Latham asked Johnson for his date of birth;

19  true or false?

20       A.   To my recollection, false.

21       Q.   After Latham asked Johnson for his date of

22  birth, Johnson then gave Latham a date of birth?

23       A.   False.

24       Q.   Latham asked Anthony what his birthday was;



1    true or false?

2        MR. ROSE:  Objection, asked and answered about five

3    times.  You're going to keep asking the same questions.

4        MR. HORWITZ:  Nope, that's not what I'm doing.

5            Answer the question.

6        MR. ROSE:  What are you doing, Counsel, if you're

7    not asking the same questions?

8        MR. HORWITZ:  I'm not doing this, Jason.  You can

9    instruct him not to answer.  It's all up to you.  I'm

10   asking a question.  I'm not doing anything more.

11           Answer the question, please, Officer.  Here is

12   the question...

13   BY MR. HORWITZ:

14       Q.   Latham said to Johnson, "What is your date of

15   birth?"  Strike that.

16           Latham said to Johnson, "What is your

17   birthday?"

18       A.   Based on the information that I heard that we

19   just talked about, that would be false.

20       Q.   True or false based upon what you heard;

21   Latham ran Anthony Johnson's name that Anthony Johnson

22   gave him through dispatch?

23       A.   Are we talking of just the information that

24   you asked me to remember or the whole scenario here?



1        Q.    What I'm asking you to remember.

2        A.    False.

3        Q.    Specific from what you remember in this

4   situation, do you remember Officer Latham asking Anthony

5   Johnson for what his birthday was, and then running the

6   name and date of birth that Anthony Johnson provided him

7   through dispatch?

8        A.    Correct.  I don't remember hearing that.

9        Q.    What?

10        A.    I said correct.

11        MR. ROSE:  And then he said, "I don't remember

12   hearing that."

13   BY MR. HORWITZ:

14        Q.    That's not what I asked you.  I don't think

15   it's what I asked you.  But if I did, maybe I wasn't

16   very clear.

17             Tell me if you observed the following:

18   Officer Latham asked Anthony what his birthday was, and

19   then Anthony provided a date.  Officer Latham then ran

20   Anthony's name and date of birth, meaning the date that

21   Anthony provided through dispatch.

22        A.    No, I did not observe that.

23        Q.    If you were present when that occurred, if you

24   were within five of Latham and Johnson and Zingre when



1    that occurred --

2         MR. ROSE:  Counsel, are you not listening?  I am

3    going to object, and it's going to be a speaking

4    objection.  So if you want to call a judge about this,

5    we can do that, and then we'll play this back.  He just

6    told you no, and now you're asking him to assume the

7    answer is yes.  Is that what you're asking him?

8         MR. HORWITZ:  No.

9         MR. ROSE:  Yes, it is.  And I can read it back and

10   we can call the judge, and that's exactly what you did.

11   He said no, and then you go on like the answer is yes.

12        MR. HORWITZ:  All right.  I'm going to ask the next

13   question.

14   BY MR. HORWITZ:

15        Q.  If you were within five to seven feet of

16   Johnson, Zingre and Latham when there was a

17   communication with Johnson with regards to his date of

18   birth, tell me if you observed the following:  Officer

19   Latham asked Anthony what his birthday was, and Anthony

20   provided him a specific date?

21        MR. ROSE:  Objection, asked and answered.  You just

22   spent the last five minutes asking that question, and he

23   said no.  So I'm trying to decide if I'm going to let

24   him answer the question again.  Why are you asking him



1  the same questions over and over?

2      MR. HORWITZ:  You can do what you want.  I haven't

3  finished my question yet.  And I'm going to continue on

4  with my question.

5      MR. ROSE:  The longer the questions go, the more

6  confusing they become, the more compound they become,

7  the more improper they become.

8  BY MR. HORWITZ:

9      Q.   If you were within five to seven feet of

10  Johnson, Zingre and Latham on February 18th, 2014, and

11  you were present during the conversation with regards to

12  Anthony Johnson's birthday, tell me if you heard the

13  following exchange:  Officer Latham asked Anthony what

14  his birthday was, and then Anthony provided him a

15  specific date.  And after that, Latham then ran that

16  name and date of birth through dispatch.  Did you

17  observe that?

18      MR. ROSE:  Objection, asked and answered.

19      MR. HORWITZ:  Answer the question, please.

20  BY THE WITNESS:

21      A.   No, I did not.

22      Q.   Were you within five to seven feet from

23  Zingre, Latham and Johnson on February 18th, 2014 when

24  there was a communication to Johnson referable to his



1    birthday?

2          A.    Parts of it.

3          Q.    What part?

4          A.    The part where Lacey asked him if that was his

5    birthday.

6          Q.    Who is Lacey?

7          A.    Zingre.  I'm sorry.  Officer Zingre.

8          Q.    So at the time which Zingre asked Mr. Johnson

9    for his birthday, is it accurate to say that you were

10   within five to seven feet of Zingre, Latham and Johnson?

11         A.    Yes.

12         Q.    And you're clear about that in your mind?

13         A.    Yes.

14         Q.    And your memory with regards to that is not

15   confused by another incident?

16         A.    No.

17         MR. ROSE:  Counsel, we're going to take another

18   five-minute break.  How much more do you have?

19         MR. HORWITZ:  I don't know.  Go take a five-minute

20   break, and I'll let you know.

21                        (A short break was had.)

22   BY MR. HORWITZ:

23         Q.    Do you know why Anthony Johnson was arrested?

24   Strike that.



1           Do you know if he was ever criminally

2    prosecuted?

3           A.   I do not know.

4           Q.   Did you see him in jail at all?

5           A.   No, I did not.

6           Q.   Did you see him in the police car when he was

7    escorted to the jail?

8           A.   No, I did not.

9           Q.   Other than the moment in time where Anthony

10   Johnson pulled away from Officer Latham, and Officer

11   Latham would have needed to hold onto Anthony Johnson to

12   deal with that situation, do you know of any other time

13   it would have been necessary to use force as to Anthony

14   Johnson based upon what you observed?

15          A.   Not to my recollection, no.

16          Q.   Did you see Anthony Johnson ever try to batter

17   Officer Latham or Zingre?

18          A.   No.

19          Q.   Did you ever see Anthony Johnson in any pain?

20          A.   I'm sorry.  You cut out for a second.  What

21   was that?

22          Q.   Did you see Mr. Johnson in any pain at any

23   time?

24          A.   No.



1        MR. HORWITZ:  I might be done.  I just need to look

2   at my notes.

3        THE WITNESS:  Okay.

4   BY MR. HORWITZ:

5        Q.   Had you known Anthony Johnson from any prior

6   time?

7        A.   No, not to my recollection.

8        Q.   Had you ever seen Anthony Johnson after the

9   night of this incident where he was arrested with

10  regards to an outstanding warrant?

11       A.   Are you talking another evening?

12       Q.   Yeah.

13       A.   No.

14       Q.   Are you friends with Zingre?

15       A.   We're co-workers.  I wouldn't say friends.

16       Q.   How about Latham?

17       A.   The same, co-workers.

18       Q.   Have you spoken to Latham with regards to what

19  happened that evening?

20       A.   No.

21       Q.   Did the behavior of Porter Charles or Charles

22  Porter have anything to do --

23       MR. ROSE:  Porter Chandler?

24       MR. HORWITZ:  Yeah, thank you.



1  BY MR. HORWITZ:

2      Q.   Did the behavior of Porter Chandler have

3  anything to do with the use of any force attributable to

4  Anthony Johnson?

5      A.   No.

6      Q.   Was there anything that Porter Chandler did

7  that would require the need to use force attributable to

8  Anthony Johnson?

9      A.   No.

10     Q.   Was there anything that anybody did that

11  night, any of the civilians did that night, that would

12  contribute in any way to a need to use force directed at

13  Anthony Johnson?

14     A.   No.

15     Q.   Would you agree with this statement:  There

16  was nothing that any civilians did on February 18th,

17  2014 in the evening where Anthony Johnson was present

18  that would in any way, shape or form require force to be

19  used as to Anthony Johnson?

20     A.   Yes, I would agree with that.

21     Q.   Nothing civilians did that evening that

22  created a need for any officer to use force as to

23  Anthony Johnson, correct?

24     MR. ROSE:  Counsel, you asked the question twice



```
 1   and he answered it twice.  Now you're asking it a third
 2   time.  Why don't you just withdraw the question?  You
 3   got the answer that, I believe, you were looking for.
 4   Just a suggestion.
 5        MR. HORWITZ:  Can you answer the question, please?
 6        MR. ROSE:  You want him to answer the question
 7   again?
 8        THE WITNESS:  Can you repeat the question one more
 9   time, just so that I don't get it wrong?
10        MR. HORWITZ:  Ms. Court Reporter, can you read the
11   question back?
12                    (Record read as requested.)
13   BY THE WITNESS:
14        A.   That's correct.
15        Q.   Porter Chandler used force; is that correct?
16        A.   Yes.
17        MR. HORWITZ:  Am I saying his name correctly,
18   Jason?
19        MR. ROSE:  Yes.
20   BY MR. HORWITZ:
21        Q.   And there is nothing about the use of force
22   that Porter Chandler executed which in any way, shape or
23   form created a need to use force as to Anthony Johnson;
24   is that correct?
```



1          A.    That's correct.

2          Q.    So, even though Porter Chandler may have been

3    aggressive, there was no need for an officer to use

4    force because of Chandler's aggressiveness where that

5    force would be directed at Johnson; is that correct?

6          MR. ROSE:  Blake, you've asked this question.

7    You're asking the same question.  I don't want to tell

8    the witness to not answer the question, but, please, you

9    already got an answer.  It was a clear answer.  Let's

10   move on, please.

11         MR. HORWITZ:  Ms. Court Reporter, can you read the

12   question back?

13                    (Record read as requested.)

14   BY THE WITNESS:

15         A.    That's correct.

16         Q.    Did Chandler cause any officers to bump into

17   Anthony Johnson?

18         A.    No.

19         Q.    Did Chandler use any force directed at

20   Johnson?

21         A.    No.

22         Q.    When Chandler was using force, was Johnson in

23   the car?

24         A.    I don't know that.

312.236.6936
877.653.6736
Fax 312.236.6968
www.jensenlitigation.com


JENSEN
Litigation Solutions

1       Q.   Was Johnson anywhere near Chandler at the

2   time?

3       A.   No.

4       MR. HORWITZ:  That's all I've got.

5       MR. ROSE:  I have a few.

6       MR. HORWITZ:  I object.

7       MR. ROSE:  Get it out.  Get it out of your system,

8   Blake.

9                       CROSS-EXAMINATION

10  BY MR. ROSE:

11      Q.   Officer, how long have you been a City of

12  Kankakee police officer?

13      A.   15 years.

14      Q.   And you were being asked today about an

15  incident that occurred on February 18th, 2014.  At one

16  point you described yourself as a back-up officer,

17  correct?

18      A.   That's correct.

19      Q.   And what was the -- and if you're not the

20  back-up officer, what are you?  A lead officer?  What is

21  that called?

22      A.   You would be the primary officer.

23      Q.   And who were the primary officer or officers

24  in this instance?



1      A.    Officer Latham and Officer Zingre.

2      Q.    And they were the first officers to arrive at

3   the scene?

4      A.    That's correct.

5      Q.    And why in this particular instance did you

6   decide to back up this particular situation?

7      A.    Because when the dispatch dispatched the call,

8   it was the type of call where there might have been

9   multiple people there, possibly arguing over a broken

10  window.

11     Q.    And do you recall what squad car you were in

12  that particular afternoon or evening?

13     A.    I was in No. 267.

14     Q.    And what is the beat or the location that

15  you're assigned to in that particular squad car?  West

16  side?  East side?

17     A.    I was K21 that evening on the west side.

18     Q.    And Officer Latham and Zingre, what was their

19  beat or zone?

20     A.    They were K12.

21     Q.    That's another west side beat?

22     A.    Correct.

23     Q.    And in fact Officer Latham and Zingre were

24  together on the afternoon in question, correct?



1      A.   That's correct.

2      Q.   And Officer Latham was a field training

3   officer; is that correct?

4      A.   That's correct.

5      Q.   Officer Zingre was a new officer at that time?

6      A.   Correct.

7      Q.   Counsel earlier asked about hits on the

8   computer and I made various objections, and then there

9   was some testimony that you gave about a local check,

10  correct?

11     A.   Correct.

12     Q.   What is a local check?

13     A.   Local check is just where you ask the

14  dispatcher a name and date -- or a name and not a date

15  of birth to see if there is a local warrant.

16     Q.   And when you say a local warrant, are we

17  talking about warrants within Kankakee County?

18     A.   Kankakee County, correct.

19     Q.   So when a local check is done on a name --

20  Anthony Johnson, for example -- it's going to look for

21  Anthony Johnsons that may have a warrant in Kankakee

22  County?

23     A.   Correct.

24     Q.   Or is it the warrant was issued in Kankakee



1    County or the individual lives in Kankakee County, if

2    you know?

3         A.    It would be the warrant in Kankakee County.

4         Q.    Now, you understand you're named by

5    plaintiff's counsel, Blake Horwitz, as a defendant in

6    this case?

7         A.    Correct.

8         Q.    And Mr. Horwitz has made various allegations

9    in this complaint against you, the primary one being --

10   well, the first one being a failure to intervene.  Now,

11   in this instance, did you ever use a racial epithet that

12   afternoon?

13        A.    No.

14        Q.    Did you ever hear Officers Latham or Zingre

15   use a racial epithet or slur that afternoon?

16        A.    No.

17        Q.    Now, there are allegations in this case that

18   Officer Latham used excessive force.  Did you observe --

19   Well, you've indicated that Officer Latham handcuffed

20   Mr. Johnson?

21        A.    Correct.

22        Q.    Other than the handcuffing of Mr. Johnson and

23   the walking of Mr. Johnson over to various squad cars,

24   did you see Officer Latham use any other force?



 1       A.   No, I did not.

 2       Q.   Did you ever see Officer Latham throw

 3  Mr. Johnson to the ground?

 4       A.   No, I did not.

 5       Q.   Did you ever see Officer Latham shove or push

 6  Mr. Johnson against any squad car?

 7       A.   No, I did not.

 8       Q.   Did you ever see Officer Latham punch or kick

 9  Mr. Johnson?

10       A.   No, I did not.

11       Q.   Did you ever see Officer Zingre use any force

12  whatsoever against Mr. Johnson?

13       A.   No, I did not.

14       Q.   Did you ever use any force of any kind

15  whatsoever against Mr. Johnson?

16       A.   No, I did not.

17       Q.   Did you ever touch Mr. Johnson?

18       A.   No, I did not.

19       Q.   Now, Mr. Horwitz's other claim against you and

20  the various officers is a false arrest.  You arrested

21  Porter Chandler?

22       MR. HORWITZ:  It's actually not my claim.  I'm not

23  a plaintiff.  I'm an attorney.  That's false

24  representation.



1       MR. ROSE:  It's your client's claim that you

2   asserted, because, actually -- I don't know.  Were you

3   at your client's deposition?  Because he didn't know why

4   he had sued Officer Zingre or Officer Tison, but that's

5   in the testimony.  We'll save that for another day.

6       MR. HORWITZ:  I guess it's because he's not an

7   attorney and he doesn't understand things.  Do you want

8   to continue on with this or do you want to ask

9   questions?

10      MR. ROSE:  No.  I'm suggesting that you made those

11  allegations, but you're saying it's your client.  Either

12  way, we'll move on.

13      MR. HORWITZ:  Jason, please just move on and ask

14  legitimate questions, seriously.

15      MR. ROSE:  That's what I'm trying to do, but you

16  keep interrupting.

17      MR. HORWITZ:  No, you're not.  Not when you say

18  that I make claims and not when you suggest that I'm

19  making spurious claims when my client is not a lawyer

20  and he doesn't understand failure to intervene concepts

21  or Rule 11 or Iqbal and Twombly.

22      MR. ROSE:  Yes, I think you made spurious claims.

23  We can agree on that.  I think you made spurious claims,

24  but we'll move on.



1      MR. HORWITZ:  Brilliant.  Brilliant execution.

2   Continue on.

3   BY MR. ROSE:

4      Q.   Did you arrest Mr. Johnson?

5      A.   No, I did not.

6      Q.   Did you place Mr. Johnson in the squad car?

7      A.   No, I did not.

8      Q.   Did you make a determination as to whether

9   Mr. Johnson would be taken to the Jerome Combs Detention

10  Center?

11     A.   No, I did not.

12     Q.   Were you present when the officers and also

13  some supervisors spoke to Mr. Johnson in the back of

14  Officer Latham's squad car?

15     A.   No, I was not.

16     MR. ROSE:  That's all I have.

17     MR. HORWITZ:  I don't have anything, Guys.  Thank

18  you very much for your time.

19     MR. ROSE:  Okay.  Bye.  We're hanging up.

20                  (Witness excused.)

21

22

23

24



1

2
```
   UNITED STATES OF AMERICA        )
   NORTHERN DISTRICT OF ILLINOIS   )
   EASTERN DIVISION                )    SS.
   STATE OF ILLINOIS               )
   COUNTY OF COOK                  )
```

3

4

5            I, ANTONETTE J. GRAHAM, Certified Shorthand
Reporter, do hereby certify that OFFICER GARY TISON was
first duly sworn by me to testify to the whole truth and
that the above deposition was reported stenographically
by me and reduced to typewriting under my personal
direction.

6

7

            I further certify that the said deposition was
taken at the time and place specified and that the
taking of said deposition commenced on the 18th day of
February, A.D., 2016, at 2:00 p.m.

8

9

10            I further certify that I am not a relative or
employee or attorney or counsel of any of the parties,
nor a relative or employee of such attorney or counsel,
nor financially interested directly or indirectly in
this action.

11

12            In witness whereof, I have hereunto set my
hand and affixed my seal of office at Chicago, Illinois,
this 12th day of May, A.D., 2016.

13

14

15            _Antonette J. Graham_

16            _____
             ANTONETTE J. GRAHAM, CSR
             180 North LaSalle Street
17           Suite 2800
             Chicago, Illinois 60601
18           Phone:  (312) 236-6936

19

CSR No. 084-004088

20

21

22

23

24



Johnson vs. Officer Latham
Officer Gary Tison - 02/18/2016

Index: 1099..camera

**1**

**1099** 6:3,4 18:13

**11** 65:21

**15** 60:13

**18th** 5:9 53:10,23
57:16 60:15

**2**

**2000** 5:3

**2014** 5:9 53:10,23
57:17 60:15

**267** 61:13

**3**

**30(c)** 10:17

**30(d)** 10:17

**4**

**400** 25:4

**9**

**9/11** 5:3

**A**

**abomination**
10:11

**accurate** 20:15
54:9

**act** 36:16

**active** 6:3,8

**activity** 13:5 14:4

**advised** 6:1,7 7:3

**afternoon** 61:12,
24 63:12,15

**aggressive** 7:14
59:3

**aggressiveness**
59:4

**agitated** 6:14

**agree** 10:24 17:14
20:9,11,19 57:15,
20 65:23

**ahead** 9:23 11:14
15:13 23:13 28:3
41:8 42:19

**allegations** 63:8,
17 65:11

**allowed** 19:14
35:1,4

**analogy** 44:17

**angry** 16:20

**Answering** 29:4

**answers** 4:6
19:15

**Anthony** 5:16 6:2
9:20,21 10:1,21
11:3 12:19,22 13:1
14:19,20 17:4,8,
12,14 18:15 20:10
22:19,21 23:1
24:11,19 25:5,13
26:1,12,13 31:24
33:1 38:17 39:24
40:3,7,19,20,22
46:10,13,15,17,18,
21 47:3,6,10 48:2,
5,8 49:1,24 50:21
51:4,6,18,19,21
52:19 53:12,13,14
54:23 55:9,11,13,
16,19 56:5,8 57:4,
8,13,17,19,23
58:23 59:17 62:20,
21

**Anthony's** 51:20

**anymore** 28:13,15

**Apparently** 26:18

**appeared** 36:9
37:12

**applied** 26:1

**apply** 22:14

**approached**
38:17

**approaching**
35:21 36:13

**agitated** 6:14

**approximately**
47:13,16

**arguing** 61:9

**arm** 8:24 9:1
30:12,16

**arms** 9:1

**arrest** 6:23 8:5
9:8,14 11:9,16,19,
21 16:18 24:11,17,
18,19 25:5 33:9
34:10 35:2 64:20
66:4

**arrested** 28:18
31:12,13,14 33:5,7
34:20 36:12 54:23
56:9 64:20

**arresting** 33:11,
14

**arrests** 24:24 25:4

**arrive** 61:2

**articulable** 13:5
14:3,10 15:6

**ass** 8:17

**asserted** 65:2

**assigned** 61:15

**assume** 11:8,13,
14 25:10 48:20
49:10 52:6

**assumed** 4:10

**assumes** 15:11

**assuming** 33:2
34:8 47:13,16

**assumption**
49:13

**attempting** 7:17

**attention** 39:15

**attorney** 64:23
65:7

**attributable** 47:7
57:3,7

**automatically**
32:21

**aware** 30:6

**B**

**back** 6:9,18 7:20,
24 8:4,5,6,18,19,
22 9:10 23:3,22
32:10,11,18,20
34:21 37:21 38:1,
7,9 52:5,9 58:11
59:12 61:6 66:13

**back-up** 60:16,20

**background**
17:12

**backup** 5:10

**bad** 9:18 10:11,14
19:8,18

**banged** 41:23
43:3 44:5

**baseball** 41:23
42:22 43:3,22 44:4

**based** 9:12 11:23
12:24 13:2,3 16:17
33:14 42:18 49:13
50:18,20 55:14

**basis** 11:23 12:2,
22 13:1,8 15:8

**bat** 41:23 42:22
43:3,22 44:4

**batter** 55:16

**beat** 61:14,19,21

**began** 5:15 6:13,
19,22 7:13 8:2
33:12 34:1,4

**begin** 30:8

**behavior** 56:21
57:2

**belief** 12:21 13:7
14:9 15:4,5

**believed** 34:9

**belligerent** 5:19

**bending** 38:2,4

**Bernthal's** 19:20

**big** 6:18

**birth** 6:5,6 23:3,23,
24 24:21 25:13,14,

**17** 26:1,4,6,7,16,
17,20,21 27:1
28:14,21 29:1,21
30:7 31:4,6,18,20,
23 32:4,5,8 34:13
35:18 40:1,4,8,9,
15,19,21 44:19,20
45:13,23 46:8,11,
15,19,22 47:4,7,
11,15,22 48:3,6,9,
10,13,17,18 49:1,
5,14,18,22 50:15
51:6,20 52:18
53:16 62:15

**birthday** 49:24
50:17 51:5,18
52:19 53:12,14
54:1,5,9

**black** 5:16 29:10

**Blake** 10:5 11:1
17:19,20 19:5
26:10 27:14 59:6
60:8 63:5

**body** 29:12 38:12,
14,16

**bother** 27:16

**Brad** 5:13

**break** 33:18,20
54:18,20,21

**Brilliant** 66:1

**broken** 61:9

**brought** 9:7

**bump** 59:16

**Bye** 66:19

**C**

**call** 5:10 19:4,21
22:15,17 27:12,15
52:4,10 61:7,8

**called** 4:20 7:13
35:8 60:21

**calling** 7:13 19:16

**calls** 27:21

**calm** 29:7,9

**camera** 7:1



Johnson vs. Officer Latham
Officer Gary Tison - 02/18/2016

Index: car..exact

**car** 5:14 6:20,21
7:17,20 8:2 9:7,10
55:6 59:23 61:11,
15 64:6 66:6,14

**care** 6:17 20:1,2
27:10

**career** 25:6

**careful** 20:16

**cars** 63:23

**case** 33:3 46:9
63:6,17

**causing** 5:20

**Center** 66:10

**Chandler** 7:23
8:4,6,9 56:23 57:2,
6 58:15,22 59:2,
16,19,22 60:1
64:21

**Chandler's** 59:4

**channel** 18:7

**charge** 33:12

**Charles** 56:21

**check** 5:23 18:20
32:8,19,20 62:9,
12,13,19

**checked** 32:23

**circle** 18:5

**circumstances**
36:12

**City** 5:5 60:11

**civilian** 44:5,18
45:9,10,13,14,18,
22 46:1

**civilians** 57:11,16,
21

**claim** 64:19,22
65:1

**claims** 65:18,19,
22,23

**clarification** 4:15

**clarify** 4:16

**clear** 26:9 30:3
45:7 51:16 54:12
59:9

**client** 65:11,19

**client's** 27:3 65:1,
3

**close** 9:7 30:17

**closer** 6:14 7:2,3

**co-workers**
56:15,17

**coincidentally**
40:8

**colloquialism**
24:14

**Combs** 66:9

**comments** 30:24

**committed** 12:4,7
14:10

**common** 17:8
18:11 20:13,15,16
21:8,16 22:9,10

**commotion** 5:20

**communicate**
40:3,7

**communicated**
25:14

**communication**
48:21,24 52:17
53:24

**complaint** 63:9

**complaints** 13:16

**compound** 9:15
13:10 14:21 15:10
20:20 21:24 34:15
46:2 53:6

**computer** 18:12,
15,19 19:9,11
20:10 21:5,6,15,20
22:11 62:8

**concept** 35:14

**concepts** 65:20

**conclusion** 13:12

**confirm** 48:9

**confused** 21:11
44:23 54:15

**confusing** 9:16
13:10 14:21 15:10

**client** 65:11,19

**dial** 20:6

**DIRECT** 4:22

**directed** 57:12
59:5,19

**discern** 32:24

**discovery** 4:3

**discuss** 12:10
15:20

**dispatch** 5:22 6:1
22:15,18 25:15,16
32:12,14,16,23
48:17 49:4,7 50:22
51:7,21 53:16 61:7

**dispatched** 61:7

**dispatcher** 32:3
62:14

**Donald** 18:6,7

**drawn** 39:15

**Dude** 19:3

**duly** 4:20

**E**

**earlier** 29:16 47:1
62:7

**easily** 19:23

**East** 61:16

**easy** 21:13 22:3

**educate** 10:12
13:13

**effect** 16:23 17:2

**emotions** 35:6

**epithet** 63:11,15

**escorted** 55:7

**estimates** 30:10

**evening** 24:17
28:11 31:13 33:23
56:11,19 57:17,21
61:12,17

**event** 42:15

**evidence** 15:12

**exact** 17:1 26:7
40:21 45:23

**20:21** 41:5 46:2
53:6

**connection** 9:3

**considered** 6:3

**continue** 7:8
13:15,20 53:3 65:8
66:2

**contraband** 9:9

**contribute** 57:12

**conversation**
24:4 48:13 53:11

**cooperating** 29:1

**cooperative**
28:22

**correct** 5:7 11:4,5
13:9 14:4,5,7,8,20
15:9,23,24 16:3,4,
6,9,10,11,12,18,
19,21,22,24 17:4,
7,9,10 18:17 20:24
21:9,10,11,13,14,
21,22 22:7,8,12,
13,19,20 25:9,14,
18 26:2,6,13,14,
15,16,18,22 28:22,
23 29:2,3,5,7,9
31:7,8 33:1,15
35:3 37:20 38:19
39:19 44:13 48:10,
11,14,15 51:8,10
57:23 58:14,15,24
59:1,5,15 60:17,18
61:4,22,24 62:1,3,
4,6,10,11,18,23
63:7,21

**correctly** 58:17

**counsel** 13:10,23
14:12 18:5,24
19:10 23:15,18
33:18 40:24 44:21
50:6 52:2 54:17
57:24 62:7 63:5

**County** 62:17,18,
22 63:1,3

**couple** 5:17 18:12
25:1

**court** 19:6,12,13
27:18 36:3 39:10
58:10 59:11

**courtroom** 19:9

**created** 57:22
58:23

**crime** 12:4,7 14:11
31:9

**criminal** 13:5 14:4

**criminally** 55:1

**CROSS-
EXAMINATION**
60:9

**cut** 55:20

**D**

**dark** 38:15

**date** 6:5,6 23:3,23,
24 24:20 25:13,14,
16 26:1,4,5,7,16,
17,20,21,24 28:14,
20,24 29:21 30:7
31:4,6,18,19,23
32:4,5,8 34:13
35:18 39:24 40:3,
8,15,19,21 44:19
45:13,23 46:7,11,
15,19,21 47:4,7,
11,15,21 48:3,6,9,
10,13,17,18 49:1,
14,18,21,22 50:14
51:6,19,20 52:17,
20 53:15,16 62:14

**dates** 49:5

**day** 65:5

**deal** 6:18 55:12

**dealing** 21:2
29:16

**decide** 52:23 61:6

**defendant** 63:5

**definitions** 42:13

**department** 5:4,5
9:13 13:1

**deposition** 4:3
65:3

**Detention** 66:9

**determination**
66:8



Johnson vs. Officer Latham
Officer Gary Tison - 02/18/2016

Index: EXAMINATION..instance

**EXAMINATION** 4:22

**examined** 4:21

**excessive** 63:18

**exchange** 29:20 30:1 53:13

**excused** 66:20

**executed** 58:22

**execution** 66:1

**explain** 9:24

**explanation** 26:23

**expression** 29:9

**expressions** 29:11

---

**F**

**face** 8:16

**facial** 29:9,11

**fact** 17:3 61:23

**facts** 15:11

**failure** 63:10 65:20

**false** 26:24 31:17, 19 33:10,15 49:14, 19,20,23 50:1,19, 20 51:2 64:20,23

**falsified** 31:4

**falsify** 31:6 34:13 35:18

**falsifying** 31:14 33:5,8

**family** 10:2

**fashion** 28:17

**favor** 10:6

**February** 5:9 53:10,23 57:16 60:15

**Federal** 4:4

**feel** 17:18,20

**feet** 30:11 38:15 47:14,16 52:15

53:9,22 54:10

**fellow** 41:13

**female** 12:15

**field** 62:2

**find** 17:13 41:14, 24 42:7,8 43:5,14 44:7 45:22

**fine** 7:10 44:2

**finish** 44:24

**finished** 53:3

**five-minute** 54:18,19

**flailing** 37:12,14, 16,19,23

**force** 33:23 55:13 57:3,7,12,18,22 58:15,21,23 59:4, 5,19,22 63:18,24 64:11,14

**form** 15:10 17:15 20:20 34:15 35:23 41:6 42:3 57:18 58:23

**forward** 30:15

**found** 9:9 43:11

**foundation** 10:23 13:22 39:1

**fourth** 7:22

**friend** 9:17 17:23

**friendly** 20:3

**friends** 5:24 56:14,15

**front** 8:20,23 18:4 23:9 26:2

**fucking** 8:17

**full** 44:20

---

**G**

**GARY** 4:19

**gave** 31:17,19 33:15 40:15,19 49:14,22 50:22 62:9

**gentleman** 22:18

**give** 21:1 32:5 33:10 42:12 46:7

**giving** 13:23

**good** 19:14 21:16

**grabbed** 8:24 9:1

**gray** 14:14,15

**grayer** 14:16

**Great** 20:7 27:17

**ground** 4:5 8:21 64:3

**guess** 7:22 28:8 65:6

**guessing** 32:16

**Guys** 66:17

---

**H**

**hair** 14:14

**handcuff** 34:5 39:16

**handcuffed** 9:5 11:11 35:19 37:13, 21 63:19

**handcuffing** 34:14 63:22

**handcuffs** 6:9 35:22 36:13 38:18

**hands** 8:22 9:4 29:12 37:13,19,21

**hanging** 66:19

**happen** 36:7 46:6

**happened** 43:16 56:19

**harassed** 17:18, 20

**harassing** 17:16 42:4

**head** 41:24 43:4, 22 44:5

**hear** 7:17 17:24 23:1 29:20,22 39:24 40:5 46:13, 17,21 47:3,6,10,

18,20,23 48:2,5 63:14

**heard** 7:15 8:2 22:21 25:19,21 26:4,17,20 29:23, 24 37:11 42:24 47:24 48:1,21 49:17 50:18,20 53:12

**hearing** 6:1,5,22 51:8,12

**hearsay** 13:22

**held** 7:9

**helped** 9:6

**high** 18:16

**hit** 12:5 20:11,18 21:4,6,15,20 22:11 23:4,22 31:24 32:4,10,18,20 42:22 43:21

**hits** 62:7

**hold** 7:4 34:2 41:4 55:11

**holler** 36:17,18 37:1

**Honestly** 36:15

**horrendous** 42:18

**Horwitz** 4:2,9,12, 15,23 7:7 9:17,22 10:2,6,10 11:2 13:12,18,21,24 14:1,13,17,23 15:13 17:17,22 18:1,6,21 19:1,3, 19 20:8,22 22:2 23:16,20 26:11 27:4,6,8,17,22 33:21 34:16 35:24 36:3 39:1,4,5,9,13 41:2,8 42:5,14,19 44:24 45:4,8 46:4 47:2 50:4,8,13 51:13 52:8,12,14 53:2,8,19 54:19,22 56:1,4,24 57:1 58:5,10,17,20 59:11 60:4,6 63:5, 8 64:22 65:6,13,17 66:1,17

**Horwitz's** 64:19

**hostile** 29:18,20

**house** 12:6 14:11

**human** 11:6 28:7

**hundred** 25:1

**hypothetical** 9:15 13:2,3 14:22 15:11 41:5,20 46:3

---

**I**

**ID** 6:12

**idea** 21:17 23:5 30:9 40:10

**identification** 21:1

**identified** 7:23

**Illinois** 35:11

**imagine** 33:9

**immediately** 28:20,24 39:8

**impeachment** 10:16

**improper** 53:7

**incident** 9:8 25:1 54:15 56:9 60:15

**incomplete** 15:11 19:11,16

**individual** 7:22 21:18 22:11,12 34:8,9 35:13 40:16 44:20 45:24 63:1

**individuals** 30:20 34:19 35:1 47:17

**information** 28:13,15 50:18,23

**informed** 6:4

**initial** 33:13,16

**initially** 39:19,20, 21,23

**inquiring** 21:19

**instance** 22:17 46:10 60:24 61:5 63:11



Johnson vs. Officer Latham
Officer Gary Tison - 02/18/2016

Index: instruct..objection

**instruct** 50:9

**interaction** 5:9
28:11 46:14

**interfere** 6:17
7:11

**internal** 40:11

**interrupting**
23:14,19 65:16

**interruption** 7:6

**intervene** 63:10
65:20

**investigate** 20:16

**investigating**
20:17 41:11

**investigation**
40:12 45:17

**involved** 24:24
25:4

**Iqbal** 65:21

**irrelevant** 42:4

**irritated** 6:10

**issue** 15:7 22:7
46:18

**issued** 62:24

---

**J**

**jail** 55:4,7

**Jason** 14:13,14
17:22 18:21 19:1
27:8 45:4 50:8
58:18 65:13

**Jerome** 66:9

**job** 18:21,23 34:24

**Johnson** 5:9,16,
21,24 6:2,7,8,9,15,
19,23 7:16,17,19
8:1,5,13 9:11,14,
20,21 10:1,21
11:3,6 12:8,19,22
13:2,6 14:19,20
15:4,6,8,17,18,19,
22 16:1,20 17:4,8,
12,14 18:15 20:10
22:19,21 24:11,19
25:5,13 26:2,12,13

29:24 30:6,18,22
31:3,17,24 33:1,
22,24 34:12 35:18
37:11 38:18 39:16,
18,24 40:3,7,19,
20,22 43:2,3,4
46:10,13,18,21
47:3,6,10,15,18,21
48:3,6,9,18 49:1,5,
8,14,18,21,22
50:14,16,21 51:5,
6,24 52:16,17
53:10,23,24 54:8,
10,23 55:10,11,14,
16,19,22 56:5,8
57:4,8,13,17,19,23
58:23 59:5,17,20,
22 60:1 62:20
63:20,22,23 64:3,
6,9,12,15,17 66:4,
6,9,13

**Johnson's** 5:18
46:15,19 47:21
50:21 53:12

**Johnsons** 62:21

**judge** 10:15 19:4,
20 27:13 39:11
52:4,10

---

**K**

**K12** 61:20

**K21** 61:17

**Kankakee** 5:5
60:12 62:17,18,21,
24 63:1,3

**kick** 8:17 64:8

**kind** 10:16 42:16
44:15 45:5 64:14

**knowledge** 9:13
11:16,18 12:22,23
13:7 15:16,22 16:1
40:6 46:11,12

---

**L**

**L.e.a.d.s** 32:2,15

**L.E.A.D.S.** 31:19,
20,24 32:3,6,9,13,
17,19,21,23

**Lacey** 5:12 6:6
8:24 54:4,6

**lack** 10:23

**Latham** 5:13,21
6:2,7,11,15,19
7:16,19 8:1,3,7,9,
12 11:11 12:11,13,
17 14:10,18,19
15:4,16,19 16:17
28:12 32:7 34:2,5,
14 35:20,21 37:10
38:17 39:15,19
40:1,4,7 46:11,14
47:11,14,21 48:2
49:4,8,14,16,17,
18,21,22,24 50:14,
16,21 51:4,18,19,
24 52:16,19 53:10,
13,15,23 54:10
55:10,11,17 56:16,
18 61:1,18,23 62:2
63:14,18,19,24
64:2,5,8

**Latham's** 66:14

**law** 35:5,12

**lawyer** 65:19

**lead** 60:20

**learn** 10:12

**learned** 16:16

**learns** 45:11

**left** 8:24 38:10,13

**legal** 10:7,18,23
11:21 13:12,19,20
39:1,3

**legitimate** 65:14

**liar** 28:6,7

**library** 7:4

**lie** 28:9

**lied** 28:20,24 29:20

**likelihood** 18:16
20:10

**limited** 10:7

**listening** 52:2

**lives** 63:1

**local** 5:23 32:8,19,
20 62:9,12,13,15,

16,19

**location** 61:14

**locked** 6:22

**long** 22:6 60:11

**longer** 13:14,16,
17 53:5

**looked** 16:13 37:2,
11 41:12

**lost** 44:1

**loud** 4:7 30:23

---

**M**

**made** 9:3 62:8
63:8 65:10,22,23

**make** 19:6,12,13
20:17 21:18 22:10
26:24 31:3 41:4
45:7 65:18 66:8

**making** 30:24
65:19

**male** 5:14,16

**man** 11:3 40:15,
16,19 43:2

**matched** 33:17

**matter** 20:18
27:11 43:11 45:17

**matters** 16:14

**meaning** 24:20
51:20

**means** 6:3 10:20
31:22 38:9

**memory** 23:7,8
24:3,6 54:14

**mind** 11:15 24:20,
22 27:3 30:3 54:12

**mine** 6:22

**minutes** 5:15
33:19 52:22

**Mischaracterizes**
42:17

**misidentify** 31:9

**misrepresent**
28:14

**moment** 6:10
11:9,12,13 17:11
25:10 48:17 49:10
55:9

**motion** 38:1

**mouth** 49:4

**move** 14:16 38:12
39:4 59:10 65:12,
13,24

**moving** 37:18,23
38:16

**multiple** 61:9

---

**N**

**named** 63:4

**names** 7:12,13
14:12 18:12 20:15,
16

**natural** 34:8 35:20

**needed** 7:19
55:11

**night** 56:9 57:11

**normal** 42:15

**North** 5:11

**note** 31:3

**notes** 24:7,8 56:2

**notice** 4:4

**number** 4:6 19:20

**numbers** 47:7

**numerous** 21:24

---

**O**

**oath** 26:19

**object** 10:9 18:18
19:6,23 21:23 27:2
38:23 52:3 60:6

**objection** 9:15
10:23 13:10,21
14:21 17:15 19:10
20:5,20 27:21
34:15,22 35:23
39:3,8 41:15 42:3,
17 46:2,24 50:2

312.236.6936
877.653.6736
Fax 312.236.6968
www.jensenlitigation.com

**JENSEN**
*Litigation Solutions*

Johnson vs. Officer Latham
Officer Gary Tison - 02/18/2016

Index: objections..referable

52:4,21 53:18

**objections** 9:19
10:7,18,19,23
13:16,17,19 41:5
62:8

**observe** 51:22
53:17 63:18

**observed** 5:15
7:21 16:5 33:14
51:17 52:18 55:14

**occur** 14:6

**occurred** 13:6
51:23 52:1 60:15

**occurring** 14:6
28:10

**offered** 25:12

**officer** 4:3,5,19
5:21 6:11,15,18
7:8,16,19 8:1,3,7,
9,12,24 11:11
12:11,13,14,15,16
14:3,24 18:2,8
20:9 21:8,17,19
22:3,12 23:2,11,
12,17,21 24:9
25:12 27:23 28:3,
12 32:7 34:2,4
35:20,21 37:10
39:6,14 40:1,4,12
41:11,13,21 42:19
43:1,3,4,17,20
44:3,4,6 45:10,11,
18,23 46:11,13,14,
17,22 47:4,7,11
48:2,5,8 50:11
51:4,18,19 52:18
53:13 54:7 55:10,
17 57:22 59:3
60:11,12,16,20,22,
23 61:1,18,23
62:2,3,5 63:18,19,
24 64:2,5,8,11
65:4 66:14

**officer's** 44:11
45:17

**officers** 5:12 22:9
29:2 33:4 59:16
60:23 61:2 63:14
64:20 66:12

**Ohio** 11:23

**order** 10:12 14:2
21:18 32:24 44:12

**ordinary** 42:8

**outstanding**
10:21 11:8,12
16:18,24 17:13
18:16 22:22 34:9
36:13,14 40:9,20,
22 45:12,14,16,24
56:10

**outstretched**
30:12,15

---

**P**

**pain** 55:19,22

**parlance** 21:8

**part** 24:18 48:19
54:3,4

**parts** 24:22 54:2

**patrolman** 5:1,2,
12,13 6:1,5,7

**patted** 9:8

**peaceful** 16:2,8
28:21

**peculiar** 40:23
41:14,24 42:1,7,13
43:6,11 44:9 45:22
46:7

**people** 17:19,20
30:4 35:4,5,9
36:11,15 45:15
61:9

**perception** 12:21

**permitted** 35:13

**person** 4:12
20:17,18 21:19
23:3 25:22 32:11
34:10 35:14 45:16,
19

**phenomenon**
35:8

**phone** 7:10

**photos** 43:18

**phrase** 32:1,15

**phrases** 21:24

**pitch** 29:10

**place** 14:4 33:11
48:21 66:6

**plaintiff** 64:23

**plaintiff's** 63:5

**play** 52:5

**point** 33:11 37:2
60:16

**police** 5:5 15:23
16:2 21:8 31:4,7
40:17 44:3 55:6
60:12

**pop** 18:13 20:11

**popping** 18:17

**population** 36:6

**Porter** 56:21,22,23
57:2,6 58:15,22
59:2 64:21

**possibility** 20:13

**possibly** 12:7
61:9

**practices** 9:13

**present** 47:13
51:23 53:11 57:17
66:12

**pressed** 9:2

**pretty** 9:7 22:9
30:17

**primary** 60:22,23
63:9

**principles** 22:14

**prior** 56:5

**probable** 11:18
12:5

**problem** 15:20

**proceed** 11:1

**proceeded** 7:18

**prosecuted** 55:2

**provide** 28:12
39:24 45:23 46:21
47:4,6,10 48:3,6

**provided** 40:21
48:17 51:6,19,21
52:20 53:14

**providing** 45:20

**pull** 9:1 19:20
34:4,21 36:17,19
37:1,12

**pulled** 7:1 8:18
39:18 55:10

**pulling** 34:1 35:20

**punch** 64:8

**purpose** 15:17

**purposes** 10:16

**pursuant** 4:3,4
13:7

**push** 64:5

**put** 6:8 7:19 8:22
9:6 17:12 18:2,4,
11,15 20:9

**puts** 19:8

**putting** 7:16 15:7

---

**Q**

**quad** 9:10

**question** 4:9,10,
16 9:18 14:23
15:2,11 17:15,17
18:9 19:7,12
20:20,21 21:3,4,24
22:3 27:18,23 28:1
30:18 35:17,23,24
39:9,12 41:1,2,6,9
42:3,5 44:2 45:1,6
46:4 50:5,10,11,12
52:13,22,24 53:3,
4,19 57:24 58:2,5,
6,8,11 59:6,7,8,12
61:24

**questions** 10:8,
10,13,14 19:14,15,
16,17 29:4 42:18
50:3,7 53:1,5 65:9,
14

**quick** 15:2

---

**R**

**racial** 63:11,15

**radio** 6:1 25:15,17,
21 26:17,21 29:23
48:10

**raising** 19:18

**ran** 5:22 31:23
32:3,6,12 50:21
51:19 53:15

**rank** 4:24

**reached** 8:20

**react** 35:9,14 36:8

**reacted** 36:9

**reaction** 35:9,21
36:10

**read** 24:7 27:18,20
28:1 36:4 41:17
45:9 52:9 58:10,12
59:11,13

**reading** 23:6 24:8
41:22

**real** 15:2

**realm** 36:10

**reason** 6:20 9:14
11:15,21 14:20
15:16 33:13,23

**reasonable** 13:5
14:3,9,18 15:5,6

**recall** 31:5 41:6
61:11

**recognize** 35:5
44:12

**recognized** 28:21
29:1

**recollection**
48:16 49:20 55:15
56:7

**record** 4:2 21:23
27:20 36:4 45:7
58:12 59:13

**recording** 7:10

**referable** 49:5
53:24

---



Johnson vs. Officer Latham
Officer Gary Tison - 02/18/2016

Index: referred..talks

referred 9:19

referring 10:1 44:22

reflect 4:2 27:24

refreshed 24:3,6

refused 8:15,21 9:2

relative 13:6 22:18 26:24 30:18 33:23 48:12,24

remember 5:8,24 6:5,11 24:1,8,16 25:16 29:8 37:8 38:5,22 48:4,7,8, 12 50:24 51:1,3,4, 8,11

remind 12:14

repeat 15:2 36:1 58:8

report 23:6,8 31:17 40:14,17,18 41:12,13,18,22 42:16,21 43:1,5,9, 11,14 44:3,7,9,12, 14,18,22 45:9

Reporter 27:18,24 36:3 58:10 59:11

reporting 44:3,4,6

represent 22:22

representation 26:24 64:24

request 10:13,16, 22

requested 27:20 36:4 58:12 59:13

require 10:19 43:15 57:7,18

residence 5:19

resist 33:12 35:1, 13

respectful 16:3, 11

respond 27:11

responded 5:10 30:7

response 34:8

return 22:18

returned 31:18,20 32:4

reviewing 40:17

rip 8:17

role 41:17

ROSE 9:15,18,24 10:4,8 11:1 13:10, 14,20,23 14:12,21 15:10 17:15,19,24 18:4,18,23 19:2,5 20:7,20 21:23 23:14,18 26:10 27:2,5,7,14,21 33:18 34:15,22 35:23 38:23 39:3, 7,10 40:24 41:4,15 42:3,12,17 44:21 45:2 46:2,24 50:2, 6 51:11 52:2,9,21 53:5,18 54:17 56:23 57:24 58:6, 19 59:6 60:5,7,10 65:1,10,15,22 66:3,16,19

Rule 10:17 65:21

rules 4:4,6 10:18

run 31:18,20 32:1, 8,9,15,17,21

running 51:5

---

## S

save 65:5

scenario 45:20 50:24

scene 12:13 61:3

scream 36:16,18, 24

screaming 7:18 8:7,16 29:17,19 31:1 47:24

search 17:12

seat 9:10

select 29:23

sense 22:9

separate 33:12

series 18:14

set 39:8

shape 57:18 58:22

shoes 44:11

short 10:18 33:20 54:21

shoulders 37:17, 19,24 38:6,14

shove 64:5

side 8:15 18:3 61:16,17,21

sideshow 18:2,4

sidewalk 6:13 8:19

simply 20:5

sir 4:8

situation 36:7 51:4 55:12 61:6

slur 63:15

Smith 43:2,3

snowball 12:20 14:11,19 15:5,7

snowballs 12:5

somebody's 14:11 21:16

sort 20:11 22:7 34:7

south 7:24

southbound 6:21

speak 46:13,17 47:18,21

speaking 20:5 24:16 47:15 52:3

speaks 45:9

specific 6:5 19:7 51:3 52:20 53:15

specifically 24:1

specifics 21:17

speculate 27:3,9

28:5,8 38:24

speculation 10:24 13:22 27:21 34:15 39:2 46:3

speculative 17:16 41:5,7 42:4

speculatively 46:8

speech 13:13,22 27:5,7

speeches 13:14, 23

speeching 27:4

spent 52:22

spoke 24:10,12 43:20 66:13

spoken 24:14 56:18

spurious 65:19, 22,23

squad 6:20,21 61:11,15 63:23 64:6 66:6,14

stand 7:12 8:4,6

standing 5:17 6:13 8:1 11:3 30:19,22 45:18

start 5:2 31:2

started 5:19 7:1, 10 8:8,16 34:5

state 27:3

stated 40:18

statement 57:15

step 8:15 30:15

stepped 8:19

stick 10:17,18 24:22

sticks 24:19

stood 5:14

stop 11:23 12:22 13:1,8 14:2,20 15:15 19:1 31:1

stopped 15:8,17, 19

stopping 12:2

strange 42:10 44:7,12,15

street 6:19,21 7:12,15 8:8

Strike 12:18 25:11 34:11 37:7 40:16 47:19 50:15 54:24

stuff 45:5

subject 6:4 12:6 20:18,24 31:24 43:21 45:17

subjects 5:18,24 6:12,16,24 7:9 29:17 47:24

sued 65:4

suggest 10:20 28:17 65:18

suggested 40:15

suggesting 65:10

suggestion 58:4

suggests 10:22

supervisors 66:13

surprised 34:11, 14,18,19 35:15,19

suspect 12:8,20 40:18

suspicion 12:5 13:5 14:3,10,18 15:6

sworn 4:1,21

system 60:7

---

## T

talk 10:2 15:23 16:2

talked 12:12 15:19 43:17 50:19

talking 5:13,15,17, 23 7:1 19:11 46:8 50:23 56:11 62:17

talks 4:12



Johnson vs. Officer Latham
Officer Gary Tison - 02/18/2016

Index: tased..zone

**tased** 8:21

**taser** 8:18 9:3

**telling** 6:16

**Ten** 33:19

**terms** 28:11

**Terry** 11:23 12:2,
22 13:1,8 14:2
15:15

**testified** 4:21
44:22

**testifying** 13:11

**testimony** 26:19
42:18 62:9 65:5

**thing** 7:2 28:5
36:18,20,22 37:4,
5,7,8 42:16

**things** 27:9 42:23
65:7

**threw** 15:4,7

**throw** 9:19 10:3
64:2

**throwing** 12:20
14:11

**thrown** 14:19

**ticked** 16:20

**time** 4:12 7:21 9:3
11:12,17 12:10,11
14:15 16:7,16
17:5,11 18:7 19:21
20:4 22:6 24:10
27:13 33:22 36:1
37:13 48:17 54:8
55:9,12,23 56:6
58:2,9 60:2 62:5
66:18

**times** 43:4 44:5
47:1 50:3

**Tison** 4:3,5,19
65:4

**today** 14:14 60:14

**told** 7:10,14 8:4,
10,17,18 47:24
52:6

**tone** 29:7

**torso** 29:13 38:2

**touch** 30:13,16
64:17

**trained** 22:6

**training** 9:12
12:24 62:2

**transcript** 28:1

**trial** 10:15,19
13:19,21 19:2,5

**trigger** 9:3

**true** 20:23 49:14,
15,19 50:1,20

**Trump** 18:7

**tucked** 8:22

**turn** 8:3

**Twombly** 65:21

**type** 18:19 61:8

**U**

**underneath** 9:2,4

**understand** 10:13
15:18 21:13 22:4
35:24 45:19 63:4
65:7,20

**understanding**
11:7 43:24

**understood** 4:10
22:5

**uniform** 8:17

**unit** 5:11

**unprofessional**
27:15

**unprofessionalis
m** 10:4

**unsure** 41:18

**upper** 38:16

**V**

**vague** 20:21 22:1
41:6

**victim** 12:12
43:17,20

**video** 7:9

**vivid** 48:16

**voice** 29:7

**voluntarily** 15:22
16:2

**W**

**waist** 38:4

**walk** 6:19 7:18

**walked** 5:16 6:20
8:6,7 41:21 43:2,4
44:4,6

**walking** 5:18 7:23
8:2,8,9,13 37:10
63:23

**wanted** 28:18

**warrant** 6:3,8,11,
24 9:11,12,20
10:21 11:8,13 15:7
16:18,24 17:4,13
18:13,17 22:22
23:4 26:12 32:24
34:10 36:13,14
40:9,21,22 45:12,
15,16,24 56:10
62:15,16,21,24
63:3

**warrants** 33:17
62:17

**Washington** 5:11
7:24

**weapons** 9:9

**west** 30:22 61:15,
17,21

**whatsoever**
64:12,15

**white** 5:13

**window** 12:5 15:5
61:10

**withdraw** 40:24
58:2

**word** 29:22 42:13

**words** 10:24 11:11
16:23 17:1 29:23
45:16 49:3

**work** 5:6 10:14

**worker** 7:5

**worse** 45:3

**wrong** 14:12 58:9

**Y**

**year** 5:3

**years** 60:13

**yelling** 6:23 7:17
8:6 29:17,19 30:4,
21,24 37:11

**Z**

**Zingre** 12:16,17,
19 13:6 14:9 23:2,
11,12,21 24:9
25:12 28:12 29:24
30:7,13,16 46:17,
22 47:4,8,14,18,20
48:5,8,18 49:4,8,
16 51:24 52:16
53:10,23 54:7,8,10
55:17 56:14 61:1,
18,23 62:5 63:14
64:11 65:4

**Zingre's** 13:7

**zone** 61:19

